**Michael Kenneth HOUSLER, Petitioner,**

v.

**William R. NELSON, Warden, Federal Correctional Institution, Danbury, Connecticut, and Cecil B. McCall, Chairman, United States Parole Commission, Respondents.**

Civ. No. B–78–258.

United States District Court,
D. Connecticut.

July 19, 1978.

Judith P. Resnik, New Haven, Conn., for petitioner.

Richard Blumenthal, U. S. Atty. and Hugh W. Cuthbertson, Asst. U. S. Atty., New Haven, Conn., for respondents.

MEMORANDUM OF DECISION

BURNS, District Judge.

Petitioner, an inmate at the Federal Correctional Institution (FCI), Danbury, seeks by this habeas corpus action an order from this court declaring that his constitutional rights were violated by the Parole Commission when they retarded his parole in accordance with 28 C.F.R. § 2.29(c) (1977). For the reasons set forth herein, the petition is denied.

Petitioner is serving a five-year sentence for embezzlement and theft from an interstate shipment. On December 8, 1977, while he was incarcerated at the Federal Prison Camp at Allenwood, Pennsylvania, petitioner received a presumptive parole date of October 10, 1978. After his successful appeal to both the Regional and National Offices of the United States Parole Commission, petitioner's presumptive parole date was advanced, on May 15, 1978, to June 22, 1978. The conditions of parole were that petitioner was to be released via a Community Treatment Center (CTC) with a special after-care condition that petitioner seek treatment for alcoholism in a community-based program.

In the meantime, on March 31, 1978, petitioner incurred a disciplinary report at Allenwood when he was alleged to have returned from an unescorted furlough with marijuana hidden among his shaving effects. On May 2, 1978, the Institution Disciplinary Committee (IDC) recommended that petitioner forfeit 100 days of statutory good time and his three days of camp good time for April, 1978. In addition, the IDC recommended a change in custody rating to medium and a disciplinary transfer to FCI, Danbury, for closer supervision.

Petitioner appealed the decision of the IDC by means of the administrative remedy procedure, and on June 16, 1978, the regional officials found that, although there was considerable evidence which would tend to indicate that petitioner had committed the prohibited act, there were some procedural errors in the disciplinary process which required reversal of the disciplinary action and its expungement from the record.

Accordingly, as of June 16, 1978, the June 22 parole date was no longer in danger of being affected by reason of the forfeiture of good time.

A grant of parole is conditioned upon the approval of release plans by the Regional Commissioner, 28 C.F.R. § 2.33 (1977). See also *Paulus v. Fenton*, 443 F.Supp. 473 (M.D.Pa.1977). Elements of the release plan subject to the Commissioner's approval include the availability of employment, of an approved residence, and of necessary aftercare for a parolee who, like petitioner, requires special care. 28 C.F.R. §§ 2.33(a)(1) and 2.33(a)(2).

In addition, 28 C.F.R. § 2.29(c) provides that

"[W]hen an effective date of parole has been set by the Commission, release on that date shall be conditioned upon continued good conduct by the prisoner and the completion of a satisfactory plan for parole supervision. The appropriate Regional Commissioner may, on his own motion, reconsider any case prior to release and may reopen and advance or retard a parole date. A parole grant may be retarded for up to one hundred and twenty days without a hearing for development and approval of release plans."

The authorities who were responsible for the development of petitioner's release plan learned on May 15 that petitioner had been successful in his appeal from the October presumptive parole date. At that time, they would ordinarily have begun setting up a release plan for petitioner—arranging for a CTC and a suitable alcohol aftercare program and investigating the appropriateness of petitioner's plans to reside with his fiancee after parole.

In this case, however, on May 15 these authorities were also aware that the IDC had, since the filing of the appeal of the October date, ordered forfeiture of petitioner's good time, and they had every reason to expect that the new June 22 date would be altered to reflect the IDC's action.

It was not until June 16 that petitioner's case manager learned that the IDC's action had been invalidated and that the June 22 date was to stand. Noting that only six days remained before June 22 and also noting that he had learned on June 13 that petitioner's fiancee was no longer willing to have petitioner reside with her, the case manager requested that the parole date be retarded for 90 days pursuant to 28 C.F.R. § 2.29(c) (reproduced *supra*) so that an acceptable release plan could be worked out and approved by the Commissioner. This request was granted on June 19, 1978.

Petitioner claims that the retardation of his parole, pursuant to 28 C.F.R. § 2.29(c), was unconstitutional in that it deprived him of his liberty without affording him any procedural due process. In support of this contention, petitioner cites *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and a spate of cases dealing with the due process requirements of parole rescission.

■ Retardation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such proceedings does not apply. Cf. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Instead, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell, supra*, 418 U.S. at 556, 94 S.Ct. at 2975.

■ In balancing the rights of petitioner against the needs of the Commission, the nature and weight of the liberty interest involved must be examined to determine whether it is a liberty interest within the

meaning of the Due Process Clause. Petitioner here has been forced to remain incarcerated for ninety days beyond his presumptive parole date while a plan for parole is formulated. Parole, of course, is only conditional liberty and thus 28 C.F.R. § 2.29(c) authorizes the postponement, for a maximum of 120 days, of a future conditional liberty. This, then, is the nature of the deprivation which is the subject of petitioner's complaint.

The Supreme Court has weighed various liberty interests which fall short of unconditional liberty. In *Morrissey, supra,* the Court required hearings before parole could be revoked; in *Wolff, supra,* the Court required a more rudimentary hearing before prison officials could deprive an inmate of "good time" and thus increase the length of his incarceration. This Court, too, has considered how much process attaches to less-than-complete liberty interests. The District of Connecticut has repeatedly held that due process must be given to an inmate who faces rescission of his parole date. *Drayton v. McCall* et al., 445 F.Supp. 305 (D.Conn.1978); *Bryant v. Norton,* Civil No. B–74–438 (D.Conn.1976); *McCall v. Norton,* Civil No. B–74–393 (D.Conn.1976); *Metz v. Norton,* Civil No. B–74–89 (D.Conn.1976); *Williams v. United States Board of Parole,* 383 F.Supp. 402 (D.Conn.1974).

The instant case, however, is distinguishable from *Wolff, Morrissey,* and *Drayton* et al. In each of those cases, the Parole Commission acted in response to some alleged wrongdoing by the inmate or parolee and sought as punishment, to deprive a parolee of his parole or to rescind an inmate's expected parole. The parolee or inmate, on his part, sought an opportunity to refute the charge of wrongdoing or offer evidence in mitigation. In each of these cases, the confrontation was truly of an adversary nature.

■ Here the interests of the inmate and the parole authorities are not actually at odds. Both the Parole Commission and Mr. Housler want Mr. Housler paroled as soon as possible. However, parole, rather than being an *ad hoc* exercise of clemency, is a statutorily created variation on imprisonment. Its purpose is to aid the reintegration of convicted criminals into society as constructive components. *Morrissey v. Brewer, supra* 408 U.S. at 477, 92 S.Ct. 2593. To further this purpose, the Parole Commission is empowered to impose various conditions on parole to ensure that the reintegration is accomplished effectively and with a minimal risk to the public welfare. 18 U.S.C. § 4209.

When parole has been conditioned, as here, on the inmate's enrollment in a suitable aftercare program, the parole date grant must encompass the presumption that such a program is available on that date. To hold otherwise would be to render a conditional parole meaningless.

It is unfortunate indeed that Mr. Housler's parole conditions could not be met in time for his release on June 22, 1978, but individual claims of hardship must sometimes defer to practices which aim to implement the very goals of the parole system.

In addition, it must be noted that the reason for the delay in providing Mr. Housler with a proper release program was not the application of 28 C.F.R. § 2.29(c) but rather the reasonable expectation of those charged with preparation of the program that parole would be delayed or rescinded. Furthermore, even if work had begun on the release plan promptly on May 15, there would have been a mere 37 days to make all program arrangements and have them approved by the Commission. It is possible, therefore, that 28 C.F.R. § 2.29(c) would have been invoked even absent petitioner's disciplinary troubles.

■ Petitioner urges that due process requires notice of intent to retard parole and that some kind of hearing be held before 28 C.F.R. § 2.29(c) is invoked. The regulation limits its application to cases in which release programs have not been arranged. Presumably, therefore, the proposed hearing would air issues concerning the availability of programs, a suitable residence, and the other considerations authorized by 28 C.F.R. §§ 2.33(a)(1) and 2.33(a)(2).

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell, supra,* 418 U.S. at 558, 94 S.Ct. at 2976 [citation omitted]. Petitioner has articulated no claim here that the parole authorities acted arbitrarily, but, even if he did, it does not appear to this court that a hearing before retardation could remedy or prevent arbitrary action. What evidence could petitioner present or what could he say on his behalf to dispute the Parole Commission's finding that a place in a CTC or a required aftercare program was unavailable at the time or that more time was needed to attend to the administrative details of program arrangement?

In addition, petitioner has admitted in open court that no factual dispute exists here. A hearing might aid the resolution of such a dispute, but certainly no hearing is required in this case.

In due process parlance, the term "notice" usually appears together with "hearing" and the purpose of notice is to provide an opportunity to prepare to meet the issues to be raised at the hearing. Notice alone would have provided petitioner with the opportunity to communicate with the authorities concerning his release plan and there may be cases where lack of this communication could be an abuse of discretion by the authorities. This is not such a case, however, and it does not appear that lack of notice alone, where no hearing is required, is sufficient basis for a constitutional claim.

■ Finally, it appears that what petitioner is challenging is actually not the constitutionality of 28 C.F.R. § 2.29(c) and its sanction of parole retardation without due process protection. After all, the regulation only takes effect upon the reaching of the effective parole date before a release plan has been approved. What is being challenged here may well be the delay and neglect of the authorities to start work on a release plan in time to have it approved before the presumptive parole date and, in an appropriate case, such delay and neglect could well constitute an abuse of discretion. If this is petitioner's claim, however, he has

a very poor case. In terms most favorable to petitioner the delay can only be construed to be the 23 working days between May 15 when the officials first learned of the June 22 release date and June 16 when they learned that the date would stand. When the expectation of parole delay or rescission as a consequence of the IDC action is taken into account, the delay seems reasonable. Given the number of prospective parolees whose release dates are not in jeopardy and for whom appropriate post-release arrangements must be investigated and approved, it would be administrative waste to arrange release programs which are likely to be cancelled without being put into effect. Furthermore, reservation of space in CTC's and aftercare programs for those whose parole is speculative would curtail the availability of those programs and facilities to others who, like petitioner now, are ready to take advantage of them.

In sum, then, this court is of the opinion that parole authorities in whom discretion is reposed as to parole release must remain free to fashion their own regulations to carry out the duties assigned to them by statute and that retardation of parole for 90 days in order to arrange a suitable release program does not infringe an inmate's rights to due process at least when, as here, there exists no factual dispute concerning the release program and there exists good cause why such a program could not be approved before the effective parole date had arrived. Accordingly, the petition for habeas corpus is denied.

SO ORDERED.