Mark IUTERI, Petitioner,

v.

Joseph A. NARDOZA, United States
Parole Commission and Victor
Liburdi, Respondents.

Civ. No. N–81–297 (WWE).

United States District Court,
D. Connecticut.

April 4, 1983.

Ira B. Grudberg, Jacobs, Grudberg & Belt, New Haven, Conn., for petitioner.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for respondents.

## RULING ON HABEAS CORPUS PETITION

EGINTON, District Judge.

### FINDINGS OF FACT

On July 8, 1980, Petitioner Mark Iuteri was convicted in the United States District Court for the District of Hawaii of 1) conspiracy to commit wire fraud, 2) interstate travel in furtherance of a scheme to defraud, 3) aiding and abetting the use of interstate travel in furtherance of a scheme to defraud, and 4) interstate transportation of fraudulently obtained money. Judge Samuel P. King presided over a two-day sentencing hearing during which the government introduced testimony that petitioner had a history of serious criminal behavior including allegations of homicide, assault, fraud, kidnapping, narcotics and extortion. Petitioner's attorney cross-examined the government's witnesses but petitioner did not testify. Judge King sentenced petitioner to consecutive terms totaling fifteen years under 18 U.S.C. § 4205(b)(2), permitting parole to be entirely at the discretion of the United States Parole Commission ("the Commission"). In imposing the sentence, he observed that "if there were ever a case for using the maximum, this is the case for the particular charges here" and noted that in his experience the Commission usually imposed longer periods of incarceration when the inmate was sentenced under 18 U.S.C. § 4205(b)(2). Transcript of Sentencing Hearing, at 164 (July 8, 1980).

Based upon a severity rating of moderate as to the offense and a salient factor score of ten (10), the Commission Guidelines, 28

C.F.R. § 2.20 (1982), provide for service of ten to fourteen months on the sentence. At petitioner's initial parole hearing in April, 1981, he was granted a presumptive release date of July 2, 1981, requiring incarceration for 17 months, of which 14 had already been served.

During the Commission's examination of petitioner's case the Commissioners did not have before them either the transcript of the sentencing hearing or the report of the prosecuting attorney, Form 792, customarily completed and forwarded to the Commission by the United States Attorney who prosecuted the case. Although petitioner seems to allege some form of bad faith failure to provide information to the Commission, such a case has not been proved; nor is it at all clear that any factual finding to that effect would change the outcome of this habeas corpus petition. The presentence report, considered by the Commission, contains allegations concerning pending murder charges in New Haven, Connecticut, including the claim that the victim had been shot six times "in gangland style," general allegations that Iuteri was a "bad man," and claims that he had threatened to kill anyone who testified against him. The report of the Commission hearing indicates that the Commission did consider those allegations. In addition, the Commission considered a favorable report on his behavior while incarcerated.

After the parole hearing and before his release on parole, Iuteri was turned over to Connecticut authorities to stand trial on the state murder charges.[1] Because Iuteri was able to meet bail on these charges, he was due to be released once his then imminent parole date arrived. A few days before petitioner was due to be released on parole, a strike force attorney and state prosecutors commenced an eleventh hour campaign to have petitioner's parole date reconsidered. They investigated the scope of the information considered at the initial Commission hearing and realized that it was incomplete. Strike Force Attorney Richard

Gregorie wrote a letter to Case Analyst Jack Schneider and forwarded with it the completed Form 792, requesting that the Commission reopen the case to consider this new information. The exact sequence of events and reasons for delayed preparation are disputed and somewhat unclear, but are largely irrelevant to this action for habeas corpus relief. Of importance is whether new information was actually presented to the Commission as required by 28 C.F.R. § 2.28(f) (1982). As discussed below, this court finds that new information was presented to be considered by the Commission, namely, the transcript of the sentencing hearing before Judge King and the Form 792 completed by United States Attorney Bent who prosecuted the case. Although these documents provided some information that had been previously considered by the Commission, they added the sentencing remarks of Judge King and evidence indicating that Iuteri had engaged in shylocking and loan shark activities, had attempted to promote the distribution of narcotics by offering protection to those engaged in drug distribution, had beaten a man (Satmary) with a blackjack for an extended period of time, and had held a female (Foote) against her will for several weeks, forcing her to engage in sexual activities.

Pursuant to Commission procedures, Iuteri's case was recommended for reconsideration by Regional Commissioner Nardoza and, with the votes of three National Commissioners, Iuteri's parole date was retarded pending the outcome of the reconsideration hearing. The July 10, 1981 Notice of Action gave the reasons for reconsideration as, "To consider Form USA 792 submitted by Special Attorney Bent and the sentencing remarks by the Federal District Court Judge in Hawaii. Also letter from Attorney Gregorie, U.S. Department of Justice dated June 26, 1981." This hearing was scheduled for the next available Commission docket, August 17, 1981. Iuteri was duly notified of this rehearing and of the

---

1. The murder charges were tried in New Haven, Connecticut in the summer of 1981 to a hung jury after four days of deliberations. The case will be retried at a future date.

documents that would be at issue. He then filed his initial habeas corpus petition.[2] The hearing was postponed at petitioner's request. The Hearing Examiners ultimately heard Iuteri's case on October 22, 1981, and in light of this new information they recommended that petitioner's parole date be delayed an additional four and one half years, thereby requiring service of six years on his fifteen year sentence. The Commission adopted the findings of the Examiners. The Notice of Action dated November 2, 1981 explained the continuation of his presumptive release date after service of 72 months as follows:

> Your offense behavior has been rated as moderate severity because it involved a fraud of about $15,000. Your salient factor score (SFS–81) is 10. You have been in custody a total of 18 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 10–14 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because you are a poorer risk than indicated by your salient factor score in that: on the basis of the information reviewed at your special reconsideration hearing (including Form 792 submitted by Special Attorney Bent, sentencing transcript of hearing of July 7, 1980 and June 26, 1981 letter of Department of Justice Attorney Gregorie) the Commission finds that you attached (sic) a man viciously with a blackjack shattering his nose and also forced a young woman into prostitution. These actions evince a criminal orientation not generally seen by the Commission in offenders with your salient factor score of 10. As required by law, you have also been scheduled for a statutory interim hearing during October 1983.

2. Iuteri also requested release on bail pending the outcome of the habeas corpus petition. This request was denied on appeal. *Iuteri v. Nardoza,* 662 F.2d 159 (2d Cir.1981). Once the

After an evidentiary hearing, followed by post-hearing briefs and oral argument on the subject of the amended habeas corpus petition requesting immediate release, this case is now ripe for decision. Petitioner challenges the actions of the Commission and his current incarceration on multiple grounds. First, petitioner claims that the retardation procedure under 28 C.F.R. § 2.28(f) imposed an unconstitutional denial of due process in that he was denied his freedom without appropriate procedural safeguards. Secondly, he claims that the Commission violated its own regulations set out in 28 C.F.R. § 2.28(f) by reopening his case without any "new" information required by that section. Petitioner advocates an interpretation of this section permitting reconsideration only when information not previously in existence comes to light. Because the transcript of the sentencing hearing and the information contained in the Form 792 were extant or obtainable at the time of the Commission's initial parole hearing, petitioner claims that the Commission should have been barred from reopening the parole hearing when this information came to its attention. Lastly, petitioner claims that the Commission's imposition of a period of incarceration far outside the guidelines promulgated by the Commission in 28 C.F.R. § 2.20 constitutes an abuse of discretion and therefore a denial of due process. This court will examine each claim in turn.

DISCUSSION

I. *The Retardation Procedure of 28 C.F.R. § 2.28(f)*

Petitioner challenges the constitutionality of the Commission regulation that allows the Commission, solely upon the presentation of new adverse information, to retard a parole grantee's release date until the Commission holds a final hearing and issues a decision in the matter. The relevant section of the regulations provides:

Commission delivered its final decision, after reconsideration, petitioner filed an amended habeas corpus petition.

Upon receipt of new and significant adverse information that is not covered [elsewhere in] this section, the Regional Commissioner may refer a case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing. Such referral by the Regional Commissioner shall automatically retard the prisoner's scheduled release date until a final decision is reached in the case. The decision to schedule a case for a special reconsideration hearing shall be based on the concurrence of three out of five votes, and the hearing shall be conducted in accordance with the procedures [for initial parole hearings] set forth in §§ 2.12 and 2.13. The entry of a new order following such hearing shall void the previously established release date.

Petitioner claims that his protected expectations of parole have been denied without the requisite procedural safeguards, and the regulation which permits this is therefore unconstitutional. For the reasons set forth below, this court does not agree that the regulation deprives petitioner of any constitutional procedural safeguards to which he is entitled.

Three separate Commission determinations appear to be involved in petitioner's procedural claims: 1) the decision by Regional Commissioner Nardoza to recommend reconsideration which automatically retards the parole grantee's release date; 2) the affirmance by three of the five National Commissioners to reconsider the parole date; 3) the ultimate reconsideration by the Commission based upon the new adverse information.

■ Petitioner first argues that the foregoing regulation is unconstitutional because it gives sweeping and arbitrary power to the Regional Commissioner to retard an inmate's release without a hearing of any kind when he makes his referral to the National Commissioners. Although the National Commissioners are instructed to vote on the necessity for a special reconsideration hearing, the complaint of the petitioner

rests on the absence in the regulation of any requirement that a prompt decision be made by the Commissioners. As the petitioner puts it in his brief, page 11, the regulation permits the decision of the Commissioners to be "unhurried" and the reconsideration hearing to be "unscheduled" for an indefinite period of time. In short, he demands a hearing *before* the Regional Commissioner's referral is permitted to retard his release date.

With regard to this first determination *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), holds that even an unincarcerated parolee is not constitutionally entitled to a hearing *prior* to arrest for a parole violation. It follows therefore that Iuteri, who was incarcerated, was not entitled to a hearing prior to Regional Commissioner Nardoza retarding his parole by referring the case to the National Commissioners for reconsideration. *Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981) (*dictum*); *see also Jago v. Van Curen,* 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (*per curiam*) (under Ohio law, no hearing required to rescind parole); *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 9, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) (distinction between liberty on parole and mere expectation of release).

Petitioner has not alleged that the procedures used at the final reconsideration hearing (the third determination), originally scheduled for August 1981 and postponed at his request, were constitutionally or procedurally deficient. What petitioner does claim is that the retardation procedure can be abused, and was abused in this case, to detain a prisoner without a hearing for an extended period of time beyond his release date. The question then narrows to what due process rights, if any, are implicated in the time period after the first determination in which the Regional Commissioner has retarded parole by recommending reconsideration but before the second determination when the National Commissioners

vote to reconsider,[3] and, again, in the time period after the second determination, if the reconsideration has been approved but before the hearing actually takes place (the third determination).

The court is presented with a compelling factual scenario within which it is asked to decide this issue. The petitioner's incarceration was prolonged on the eve of his anticipated release. Although not yet free, Iuteri had "the taste of freedom in his mouth, the smell of freedom in the air, and the touch of freedom within his grasp." *Drayton v. McCall,* 584 F.2d 1208, 1219 (2d Cir. 1978). This setting induces a much different visceral reaction from one in which the decision to reconsider does not affect the release date. If a sufficient period of time had been available in this case, *Drayton v. McCall, supra,* would mandate only a holding that due process requires the type of reconsideration hearing held here, convened within a reasonable time.

It seems, however, that Iuteri's predicament is not unique. Unfortunately, such eleventh hour submissions appear to be all too frequent. In fact, a recurring need to consider such last minute information before a prisoner's release (at which time the Commission loses jurisdiction over his period of confinement) impelled the Commission to promulgate the regulation now set forth at 28 C.F.R. § 2.28(f). 45 Fed.Reg. 84,053 (December 22, 1980).

It is clear that Iuteri was not at liberty and had merely an expectancy of freedom. Even this mere expectation, however, may be entitled to some degree of constitutional protection. *Greenholtz, supra,* 442 U.S. at 12, 99 S.Ct. at 2106. The question is what degree. In *Jago v. Van Curen, supra,* 454 U.S. at 17, 102 S.Ct. at 33, the Supreme Court held that a mutually explicit understanding about grant of parole date does not create a protected liberty interest, although in dissent Justice Stevens noted that, because the Supreme Court majority relied upon a statement by the court of appeals that Ohio law creates no protected liberty interest, the question remains whether the grant of a specific release date creates a legitimate expectation of freedom so as to trigger due process protection. *Id.* at 25–26 n. 3, 102 S.Ct. at 38 n. 3. This court need not decide whether the Parole Commission's Guidelines, the particular regulation at issue here, or the federal parole system in its entirety created a protected liberty interest under the standards set forth in *Greenholtz, supra,* 442 U.S. at 9–12, 99 S.Ct. at 2104–06.[4]

■ Even assuming, *arguendo,* that the guidelines in conjunction with the grant of a parole date do create an interest that requires due process protections, the regulation in this instance provides sufficient process to satisfy the Constitution.[5]

---

**3.** The concurrence of the National Commissioners can also be viewed as part of the initial retardation. Under *Morrissey,* therefore, a final reconsideration alone, held within a reasonable time satisfies the inmate's constitutional rights.

**4.** Recently, several courts have held that an entitlement protected by due process has been created under 18 U.S.C. § 4208 (1980), which uses the important language that parole *shall* be granted *unless* certain conditions are met. *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982); *Evans v. Dillahunty,* 662 F.2d 522 (8th Cir. 1981); *cf. Boothe v. Hammock,* 605 F.2d 661 (2d Cir.1979) (entitlement not created by New York State parole statute because shall/unless language not present); *Drayton v. McCall,* 584 F.2d 1208 (2d Cir.1978) (pre-*Greenholtz* opinion requiring minimal due process before rescinding parole). *But see Pugliese v. Nelson,* 617 F.2d 916, 923–25 (2d Cir.1980) (just as the

interest can be created, the expectation can be conditioned statutorily).

**5.** It should be noted that similar retardation provisions have been held, in this district, not to violate the due process clause of the Constitution. At least two other situations allow the Commissioner to retard a prisoner's parole date without any hearing at all. Under 28 C.F.R. § 2.28(e), a release date may be automatically retarded without a hearing for up to 120 days if the inmate does not have a satisfactory parole supervision plan by the time of his expected release date. The constitutionality of this regulation was upheld in *Housler v. Nelson,* 453 F.Supp. 874 (D.Conn.1978). Similarly, under 28 C.F.R. § 2.34(a), a release date may be automatically retarded for up to 60 days upon information that a parole grantee has been found by an institutional disciplinary committee to have violated prison disciplinary rules or committed

Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the due process clause of the fifth amendment. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Assuming, without deciding, that the grant of a parole release date creates such a protected interest, the court must then analyze whether the regulations provide an opportunity to be heard "at a meaningful time and in a meaningful manner" under the circumstances. *Id.* at 333, 96 S.Ct. at 902. In weighing the governmental and private interests that are affected, three distinct factors must be analyzed: 1) the private interest that will be affected by the official action, translated as petitioner's stake in the retardation procedure; 2) the risk of an erroneous deprivation of such an interest through the procedures used and the probable value, if any, of any substitute procedural safeguards; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail. *Id.* at 335, 96 S.Ct. at 903; *United States ex rel. Bey v. Connecticut State Board of Parole,* 443 F.2d 1079, 1086 (2d Cir.1971).

### a. *The Private Interest*

Understandably, Iuteri's interest in release is compelling. *See Drayton, supra.* The Supreme Court, however, has indicated that there is a "crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz, supra,* 442 U.S. at 9, 99 S.Ct. at 2105. The interest after the parolee has been released is much stronger than that before release. *Jago v. Van Curen, supra,* 454 U.S. at 18–21, 102 S.Ct. at 34–35; *id.* at 23–24, 102 S.Ct. at 37 (dissent); *United States ex rel. Bey, supra,* 443 F.2d at 1086. In the federal system,

the magnitude of the deprivation caused by the decision to postpone release to allow the Commission to reevaluate the inmate's parole potential in light of the new information has been deemed minimal and therefore the impact of official action on private interests is also minimal. *See Bullion v. Buonaiuto,* 524 F.Supp. 159, 160 (S.D.N.Y. 1981); *Housler v. Nelson,* 453 F.Supp. 874 (D.Conn.1978); *see also Mathews, supra,* 424 U.S. at 341, 96 S.Ct. at 905 (possible length of deprivation is important factor in assessing impact of official action on private interests); *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975) (same). Given this ample precedent, this court must agree that petitioner's interest is easily overwhelmed.

### b. *The Risk of an Erroneous Deprivation*

The function of legal process and factfinding as they are embodied in the Constitution is to minimize the risk of erroneous decisions. The "quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." *Greenholtz, supra,* 442 U.S. at 13, 99 S.Ct. at 2106. The initial finding that triggers the retardation of a release date is only that new and significant information has become available, not any evaluation of the reliability of that evidence. The specter of questionable credibility and veracity is not present at this stage of the procedures. *See also Mathews, supra,* 424 U.S. at 344, 96 S.Ct. at 907. The foundation of the retardation is basically an objective determination of whether the new information was previously considered by the Commission,[6] and the Commissioners are uniquely capable of making this judgment. Substantial weight ought to be given to these good-faith judgments of the individuals charged by Con-

---

a criminal act. Such procedures were also found constitutional, the necessary safeguard provided by the disciplinary committee hearing. *Bullion v. Buonaiuto,* 524 F.Supp. 159

(S.D.N.Y.1981); *Diulus v. Nelson,* Civil No. B–80–147 (D.Conn. April 14, 1980).

**6.** See Part II, *infra,* for a discussion of the definition of "new" information.

gress with the administration of parole.[7] *See id.* at 349, 96 S.Ct. at 909. At the final reconsideration hearing, permitted and protected by due process, *see Drayton, supra,* Iuteri could challenge both the existence of new information and the effect that this purportedly new information should have on his release.

### c. *The Public Interest*

In striking the appropriate due process balance, the public interest, including that of the institutional bureaucracy and of society, must be assessed. *Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903; *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). By statutory and regulatory design, the parole determination is a continual process which seeks to balance the interest of the inmate in parole and that of the public in freedom from jeopardy. Under the regulatory scheme, the retardation of petitioner's release date is essential if the Commission is to fulfill this statutory obligation. *Fox v. United States Parole Commission,* 517 F.Supp. 855, 859 (D.Kan.1981). The Commission should not be limited to a single opportunity to evaluate parole risk, but should be entitled to reconsider a parole grantee's potential before release. In Iuteri's case, it is unfortunate that the submissions were made at such a late date. The court would hope that in the future all possible steps will be taken to ensure that all available information is considered well prior to the eve of release. The timing of information submissions, however, should not preclude their consideration when they are relevant to whether the particular parole grantee is an improper candidate for early release and when the safety of the

public and the future of the prisoner are at stake. *Id.* at 860. The Supreme Court has expressed its reluctance to restrict this necessary flexibility of the Commission by mandating hearings before it may implement myriad decisions with regard to individual inmates. *Jago v. Van Curen, supra,* 454 U.S. at 19, 102 S.Ct. at 34–35. In this case the Commission provided petitioner with the requisite protections as promptly as the system will allow.

Although in the case of a parole violator's arrest *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), requires a prompt post-arrest hearing to determine whether there is probable cause to continue his incarceration and a final revocation hearing within a reasonable time thereafter, to require such hearings in the retardation setting would be to mandate an unnecessary luxury. To provide a full-blown *Morrissey* hearing or a thorough probable cause hearing either before the National Commissioners vote or once they have voted but before they have actually held the reconsideration hearing would put an undue administrative burden on the system. Additionally, such hearings might actually serve to increase the retardation period of uncertainty rather than to expedite matters.[8]

The retardation procedures themselves do not unreasonably delay the release. The referral to the National Commissioners in this case took ten days. Once they concurred in the Regional Commissioner's evaluation, the case was put on the next available docket for final determination, which in this case was a month away. Considering the administrative constraints, this delay of the anticipated release date is not unreason-

---

7. Petitioner has made bald accusations that the Commissioners were improperly influenced by the zealous campaign of the prosecuting officials. Petitioner has not proved this claim.

8. The Commissioners are apparently available for Connecticut hearings every two months. *See Diulus v. Nelson,* Civ. No. B–80–147 (D.Conn. April 19, 1980). To require a different procedure with rigid time limits would put an unjustifiably difficult burden on the Commission's resources. Such action is not appro-

priate. *Housler v. Nelson, supra,* 453 F.Supp. at 877; *Bullion v. Buonaiuto, supra,* 524 F.Supp. at 160. Without a hearing, the National Commissioners' determination issued within 10 days of Nardoza's referral, with the final hearing scheduled to be held one and a half months thereafter. Requiring an additional hearing before the final reconsideration could conceivably double the delay. *See Diulus v. Nelson, supra.*

able. Note, for example, that *Morrissey, supra,* 408 U.S. at 488, 92 S.Ct. at 2603, suggests that a two-month lapse between retardation and reconsideration would not be unreasonable. *See also Carmel v. U.S. Parole Commission,* 489 F.Supp. 113, 114 n. 4 (S.D.N.Y.1980) (a hearing within 3 months considered reasonable as long as the petitioner was not prejudiced.)

In Iuteri's case, and in the case of retardations under § 2.28(f), there are no absolute limits on the length of the retardation. It is unfortunate that such a system might be abused to create extended delays. In Iuteri's case, however, no such abuse is apparent and no attempt has been made by petitioner to show other cases of abuse. Simply because abuse is conceivable is no reason to set up elaborate procedures to avoid it. *Cf. Mathews, supra,* 424 U.S. at 344, 96 S.Ct. at 907 (procedural due process rules are shaped as applied to the generality of cases, not the rare exceptions). This court holds that the incremental gain in accuracy obtained through such a system would not outweigh the administrative burden and the potential for further delay in holding the reconsideration hearing.

## II. *Definition of New Information under § 2.28(f)*

Petitioner claims that the retardation was improper because no "new" adverse information was actually received by the Commission. The Commission thereby allegedly violated its own regulations and exceeded the discretion Congress conferred in it. Petitioner urges an interpretation of "new" information that encompasses only information that was not known or was not in existence at the time of the initial hearing. Because the sentencing hearing transcript and the information in the Form 792 containing allegations about Satmary and Foote were available to the Commission had they been sought, petitioner argues that they did not constitute new information. This court does not agree with petitioner's interpretation.

Although no definition of new information appears in the regulations, this court

holds that new information under § 2.28(f) is information that was not in front of the commission for consideration during the parole hearing. The Commission Procedure Manual supplements the regulations and provides some explanation of "new information." Section 108(B)(6) deals with reopening cases under 28 C.F.R. § 2.28(f) on a finding of new adverse information. The manual states that "[t]his subsection is the appropriate mechanism for reopening cases to consider new information about the prisoner's original offense behavior or earlier criminal activities that would have resulted in a different decision had the information *been presented to the Commission* at the time of the initial parole hearing." (emphasis added). The manual indicates that the Commission's viewpoint is determinative of novelty, not the viewpoint of those involved in prosecuting or defending the action. The rationale behind the amendment to § 2.28(f) also supports this conclusion. In promulgating the regulation the Commission noted that despite its attempts to obtain all relevant information about a prisoner before making its parole decision, "it is apparently impossible to eliminate altogether the possibility that an approaching release date will prompt certain persons or authorities possessing adverse information ... to disclose the information to the Parole Commission for the first time." 45 Fed.Reg. 84,053 (Dec. 22, 1980). Although this information may have been available to certain authorities, it was not considered by the Commission and is just the sort of data that the promulgators of the regulation anticipated. As long as it was not presented, the information is "new;" it need not have been formerly unavailable or unknown.

This court's conclusion is consistent with the interpretation made by other courts and makes sense in light of the function of the Commission as a record reviewing, not an investigative agency. *Fardella v. Garrison,* 698 F.2d 208 (4th Cir.1982); *McClanahan v. Mulcrome,* 636 F.2d 1190, 1191 (10th Cir. 1980); *Fox v. United States Parole Commission,* 517 F.Supp. 855 (D.Kan.1981); *see Iuteri v. Nardoza,* 662 F.2d 159 (2d Cir. 1981). It considers information presented

to it, see 18 U.S.C. § 4207, but is under no obligation to seek additional information. *Fox, supra,* at 859–60. The court, however, urges all authorities to take an active role in providing all necessary information to the Commission in the first instance, rather than accosting the Commission with outraged submissions on the eve of a release deemed by them to be too early.

When the Commissioners initially determined Iuteri's presumptive parole date, it is undisputed that they did not consider the transcript of the sentencing hearing, the Form 792, and the letter from Richard Gregorie. These documents contained some information duplicative of that initially presented to the Commission, but also added some very important allegations never before considered by the Commission. See Findings of Fact, *supra.* These allegations along with the comments of the sentencing judge were not included in the presentence investigation report and were not considered by the hearing examiners at the first hearing on April 29, 1981. Not only was the information important but the means by which it was conveyed, a transcript of an adversarial proceeding and the opinions of the prosecuting attorney and the sentencing judge, carries great weight. For the foregoing reasons, the Commission acted appropriately in retarding the parole to reconsider this important new information.

### III. *The Commission's Decision to Extend the Period of Incarceration*

■ Petitioner makes a forceful argument that the extension by four and a half years of his period of incarceration is unsupported by the facts presented to the Commission and the Commission's rationale for its decision and therefore constitutes an abuse of discretion. He claims that even had he been tried, convicted and sentenced of the charges of assault and prostitution considered by the Commission in reevaluating his parole prospects, *see* Notice of Action November 2, 1981, *supra,* he is being punished more harshly than the Commission guidelines, 28 C.F.R. § 2.20, would indicate.

Even with the moderate severity rating given to his offense and affirmed by the National Commissioners, were his salient factor score zero, claims petitioner, the guidelines would indicate a period of incarceration of only 24 to 32 months, not six years. The Connecticut authorities' persistent, forceful and ultimately successful eleventh hour campaign to keep Iuteri incarcerated is clearly regrettable. These unfortunate circumstances should not, however, sway the court in its review of the Commission's actions unless it appears that the Commission tacitly and improperly permitted the vociferousness of these authorities' desires to influence its calculation of a period of incarceration.

Here, the court looks not to the propriety of the submissions, but rather to whether the Commission acted arbitrarily and capriciously in translating the information considered into a period of incarceration on the fifteen year sentence. This court notes its limited role in reviewing a decision of the Commission. The appropriate standard of review, set forth in *Zannino v. Arnold,* 531 F.2d 687, 690 (3d Cir.1976), and followed in this district, provides that the district court "insure that the [Commission] has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, not based on impermissible considerations." *See Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976); *Wiggins v. Nelson,* 510 F.Supp. 666, 667 (D.Conn.1981); *Brach v. Nelson,* 472 F.Supp. 569, 575 (D.Conn. 1979). "[T]he inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." *Zannino, supra,* at 691.

The Commission is not bound to adhere inexorably to its guidelines; it may reach decisions either above or below them. The Commission's guidelines merely clarify the exercise of its administrative discretion. *Dioguardi v. United States,* 587 F.2d 572, 575 (2d Cir.1978); *Grasso v. Norton,* 520 F.2d 27, 34 (2d Cir.1975); *Myrick v. Gunnell,* 563 F.Supp. 51, 54 (D.Conn.1983). When the Commission decides, with "good

cause," 18 U.S.C. § 4206(c) (1980), to go outside its guidelines, it must give the prisoner specific reasons different from those already relied on in determining the prisoner's offense severity rating. *Hearn v. Nelson,* 496 F.Supp. 1111, 1115 (D.Conn. 1980). The Commission has wide latitude in considering information relevant to its inquiry. *See* 28 C.F.R. § 2.19.

Judgment on credibility of the evidence is vested solely in the Commission, and the Commission shall resolve disputes on accuracy of information by the preponderance of the evidence standard, that explanation which best accords with reason and probability. 28 C.F.R. § 2.19(c); *Myrick v. Gunnell, supra,* at 7; *Richards v. Crawford,* 437 F.Supp. 453, 455 (D.Conn.1977). The Commission is entitled to reject petitioner's testimony and consider information in the presentence report, in the sentencing hearing and in the Form 792. 18 U.S.C. § 4207; 28 C.F.R. § 2.19. Petitioner alleges that the Commission was in no position to judge the credibility of witnesses against him because it did not hear any testimony. Although the Commission did not examine witnesses, it considered Judge King's assessment of their credibility and of the weight that they should be accorded. At his hearing, petitioner, through counsel, was able to raise questions about that judgment.

The Commission properly weighed the impact of the witnesses against Iuteri on the Satmary assault and Foote prostitution allegations in light of the outcome of the sentencing hearing. Judge King heard the evidence and subsequently imposed the maximum sentence of fifteen years. The difference in tone between the incomplete documentation considered at the initial parole hearing and the later considered information is dramatic and bolsters the Commission's decision. A district court cannot substitute its judgment for that of the Commission simply because it disagrees. *Billiteri, supra,* at 946. In light of these allegations and the public protector function of the Commission, this court holds that the Commission properly assessed and explained the evidence against Iuteri and

acted rationally though harshly in imposing a six-year period of incarceration.

In conclusion, this court holds that petitioner's due process rights were not violated by the retardation procedure, the Commission properly considered new information and did not impose an arbitrary and capricious parole term. The habeas corpus petition is DENIED.

It is SO ORDERED.