Dr. Harry THERIAULT, a/k/a
Shiloh, Petitioner,

v.

Warden Michael QUINLAN, FCI
Otisville, New York,
Respondent.

84 Civ. 6007(RWS).

United States District Court,
S.D. New York.

June 16, 1986.

Dr. Harry Theriault pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondent; Richard W. Mark, Asst. U.S. Atty., of counsel.

SWEET, District Judge.

Petitioner Harry Theriault ("Theriault") seeks a writ of habeas corpus to vacate the extension of his release date from federal prison based on the parole reconsideration proceedings conducted on July 18, 1985. For the following reasons, the writ will be denied and Theriault's petition will be dismissed.

**Prior Proceedings**

This action commenced in August, 1984 with the filing of a habeas corpus petition by Theriault. The petition challenged certain actions of the United States Parole Commission ("Parole Commission") in connection with the revocation of Theriault's parole in 1983. The court has finally adjudicated all of the claims contained in the August, 1984 petition. *Theriault v. Quinlan*, 609 F.Supp. 733 (S.D.N.Y.), *on rehearing*, 614 F.Supp. 209 (S.D.N.Y.1985), *later opinion*, slip op. (S.D.N.Y. January 6, 1986) [Available on WESTLAW, DCTU database], *on rehearing*, slip op. (S.D.N.Y. February 21, 1986) [Available on WEST-LAW, DCTU database].

In moving for reconsideration of the January 6, 1986 opinion, Theriault argued that he was entitled to relief based upon new claims entirely different from those contained in his August, 1984 petition. These new matters concerned errors allegedly committed by the Parole Commission in connection with a July 18, 1985 parole reconsideration hearing. Specifically, Theriault claimed:

that he was not provided adequate notice of the claimed criminal conduct [which led to the reconsideration] prior to the July 18, 1985 hearing on his parole classification, that he was denied an opportunity to present evidence at the July 18 hearing in his behalf, and that the Notice of Action fails to indicate the evidence which supports the reclassification.

*Theriault v. Quinlan*, slip op. at 2 (S.D. N.Y. February 21, 1986). The government was ordered to answer Theriault's new allegations. *Id.*

## Facts

Upon the revocation of his parole in 1983, Theriault was scheduled for a presumptive reparole on August 27, 1985, after service of twenty-eight months. This decision was made on the basis of information available to the Parole Commission at the time of the revocation in 1983.

On February 14, 1985, the Parole Commission received a letter from the Chief United States Probation Officer for the District of New Hampshire. The letter attached copies of letters written by Theriault to members of his family and threatening violent action against them. Although some of the letters date back to the summer of 1983 and are contemporaneous with Theriault's parole revocation proceeding, the Parole Commission did not know of the letters at that time. The first time the Parole Commission learned of these letters was when they were forwarded to it by the Chief Probation Officer of New Hampshire in February, 1985. Subsequently, additional information concerning Theriault's threats against members of his family was provided to the Parole Commission.

Theriault's letters threaten various forms of punishment and retribution against members of his family in connection with what he apparently viewed as a "betrayal" which led to his arrest on the parole violator warrant in 1983. For example, Theriault wrote in a letter to his sister that "the kiss of death intended for me shall have a funny way of backfiring on the one who did it . . ." Similar statements appear in others of the letters. *See, e.g.,* Theriault letter of June 18, 1983 (warning his sister that she would be punished for having betrayed him by lying and turning him in); Theriault's letter of July 11, 1984 (writing to his sister on the subject of his family's betrayal by turning him in on the parole violator warrant that "[m]y sentence will be up in a few more years—then then we'll see who get the 'sweet revenge' if *that's* what you guys want").

In addition to Theriault's own letters, the Parole Commission received a lengthy affidavit from Theriault's sister Jeannette Hammond. In the affidavit, Ms. Hammond stated that shortly after Theriault was arrested on the parole violator warrant, he called her and said that because he believed she had turned him in to the authorities he would have to "kill [her], Roger and the blessed baby." She also stated that she understood Theriault's statements as threats.

On April 26, 1985, Theriault's case was reopened for reconsideration under 28 C.F.R. § 2.28(f) on the basis of this new, adverse information concerning threats by him against members of his family. Theriault was advised that the reason for the reopening was to consider information concerning his "past history of threats to members of [his] family." The documents reflecting Theriault's threats were forwarded to the Otisville Federal Correctional Institution with instructions to let the petitioner review the materials in advance of the reconsideration hearing.

Theriault reviewed the letters relied upon by the Parole Commission to reopen the case and wrote a responsive letter to the Parole Commission in which he stated that the "[p]rison staff have allowed me to review a file of *Xeroxes* of letters allegedly written by me to family members" and in which he argued that there was no proof that he had actually written the letters in question. Theriault confirmed that he had reviewed the collection of threatening letters in advance of his reconsideration hearing by signing the Parole Commission "Notice of Hearing on Parole Application" form.

At the reconsideration hearing, the hearing examiners considered the documentary evidence of Theriault's threats against other family members and heard from Theriault on the subject, who was also represented by counsel. Theriault contested the charges by claiming that the Parole Commission lacked proof that he had written the letters. His request to have the threatened family members brought to the hearing for questioning was denied.

The two members of the examining panel issued two separate recommendations after the hearing. One examiner found the charge warranted continuation of Theriault in prison until the end of his jail term,

which would have required service of approximately eight years. The other examiner recommended that Theriault be paroled on November 27, 1985. Since the two examiners could not agree on a recommendation, the case was referred to the Administrative Hearing Examiner who recommended an intermediate date of presumptive parole after service of fifty-three months. This three-way split was resolved by reference to yet another hearing examiner who agreed to the fifty-three month presumptive parole date. The Regional Commissioner approved this recommendation. As the court has already found in this case, Theriault's new presumptive parole date of September 7, 1987 reflects a reduction of the time to be served on the original parole violation occasioned by this court's vacatur of one of the findings made at the 1983 revocation hearing. *Theriault v. Quinlan,* slip op. at 2–3 (S.D.N.Y. January 6, 1986)[Available on WESTLAW, DCTU database].

The August 13, 1985 Notice of Action details the evidence used to support Parole Commission's decision. This court previously noted that:

> [a]s stated in the Notice of Action, [the] reclassification was based on "a preponderance of the evidence that you mailed a series of threatening communications to persons in the civilian community wherein you threatened them with bodily harm."

*Theriault v. Quinlan,* slip op. at 2 (S.D.N.Y. February 21, 1986) [Available on WESTLAW, DCTU database] (*quoting* Notice of Action dated August 13, 1985). Theriault filed an administrative appeal of this decision with the National Appeals Board. On November 29, 1985 the Board affirmed the August 13 Notice of Action.

### Discussion

#### A. Reconsideration Procedure

■ The regulations of the Parole Commission provide that:

> [u]pon receipt of new and significant adverse information ... a Commissioner may refer the case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing ... The decision to schedule a case for a special reconsideration hearing shall be based on the concurrence of three out of five votes, and the hearing shall be conducted in accordance with the procedures set forth in §§ 2.12 and 2.13. The entry of a new order following such hearing shall void the previously established release date.

28 C.F.R. § 2.28(f).[1] The "new" information referred to in the regulation encompasses information which might have had an effect on the initial parole decision had it been available, *Fardella v. Garrison,* 698 F.2d 208, 211 (4th Cir.1982), or simply "information that was not in front of the commission for consideration during the parole hearing." *Iuteri v. Nardoza,* 560 F.Supp. 745, 753 (D.Conn.1983), *aff'd,* 732 F.2d 32 (2d Cir.1984). Thus, the Parole Commission can "reopen a case under § 2.28(f) on the basis of previously existing information that was not considered at the initial hearing." *Fardella, supra,* 698 F.2d at 211; *accord Iuteri, supra,* 560 F.Supp. at 753.

■ In this case, the information that Theriault had mailed threatening communications to members of his family was not before the Parole Commission at the time of the 1983 revocation proceeding and the Parole Commission did not know of these letters until February, 1985. Thus, although some of the letters were apparently in existence at the time of the parole revocation proceeding:

> [they were] not considered by the Commission and [are] just the sort of data that the promulgators of the regulation [28 C.F.R. § 2.28(f)] anticipated. As

1. In the February 21, 1986 opinion, the court mischaracterized the reconsideration hearing as a rescission of parole under 28 C.F.R. § 2.34 based upon unsatisfactory conduct by a prisoner. Reconsideration proceedings, however, are governed by a different regulation, 28 C.F.R. § 2.28. The reconsideration is conducted in accordance with the regulations which govern initial parole hearings. *Id.; see* 28 C.F.R. §§ 2.12, 2.13.

long as it was not presented, the information is "new"; it need not have been formerly available or unknown.

*Iuteri, supra,* 560 F.Supp. at 753. Therefore, the Parole Commission's decision to reopen Theriault's case was proper.

## B. Due Process

■ Theriault's due process claims are not supported by the record of the proceedings below. With regard to Theriault's claim that he lacked notice of the claimed criminal conduct in advance of the reconsideration hearing, this assertion is refuted by the April 26, 1985 Notice of Action informing Theriault that his case was being reopened. That document stated that the purpose of the reconsideration hearing was "[t]o consider letters from U.S. Probation Officer dated February 12, 1985 and enclosures concerning your unpredictable behavior and past history of threats to members of your family." Furthermore, Theriault confirmed in writing to the Parole Commission that he had reviewed the threatening letters as of May 5, 1985, two months before the reconsideration hearing. Thus, Theriault had ample advance notice of the new information underlying the decision to reopen his case for reconsideration. Although there is some question whether Theriault saw the cover letters of the Probation Officer who forwarded Theriault's letters to the Parole Commission, this would not have deprived Theriault of his right to notice since the letters do not provide any material information other than that found in the letters themselves and the Notice of Hearing.

The Parole Commissions' Notice of Action indicates that the examiners' concluded from the evidence that Theriault "committed new criminal behavior [while in custody by mailing] a series of threatening communications to persons within the civilian community wherein you threatened them with bodily harm." Theriault was not denied an opportunity to present evidence at the hearing. The examiners reviewed the threatening letters in question with him and he was afforded an opportunity to make a statement as he saw fit. His contention that

the Parole Commission had no basis for attributing the letters to him cannot be established from the letters themselves. Therefore, there is no basis to overturn the examiners' rejection of such a claim.

The letters provide a sufficient basis for the Parole Commission's finding that the communications were substantively threatening. The Parole Commission exercises "considerable discretion" in weighing evidence. *Iuteri,* 732 F.2d at 36. Since "Congress has vested the sole power to grant or deny parole in the sound discretion of the Commission," *Iuteri,* 732 F.2d at 36, a decision can be challenged only if "it is 'arbitrary [or] capricious or an abuse of discretion.'" *Baker v. McCall,* 543 F.Supp. 498, 499 (S.D.N.Y.1981), *aff'd mem.,* 697 F.2d 287 (2d Cir.1982) (*quoting Dye v. United States Parole Commission,* 558 F.2d 1376, 1378 (10th Cir.1977)). *Accord, Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). In reviewing a Parole Commission decision, a court may consider only "whether there is a rational basis for the Commission's decision." *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983).

Finally, the new determination of Theriault's presumptive parole date was reached in accordance with the Parole Commission regulations. The guiding regulation provides, in pertinent part:

A panel recommendation requires two concurring examiner votes. In the event an examiner panel cannot agree upon a recommendation, the administrative hearing examiner shall vote. If the administrative hearing examiner does not concur with either member of the panel, the case shall be referred to any available hearing examiner for a further vote until a recommendation is reached.

28 C.F.R. § 2.23(c). This procedure was followed in Theriault's case. As described in the Schneider affidavit, the examiner panel in Theriault's case could not agree on a recommendation and the case was referred to the Administrative Hearing Examiner. The Administrative Hearing Examiner disagreed with both panel members and made his own recommendation as to

the time petitioner should serve on the parole revocation. *Id.* The possibility of such disagreement is contemplated by the regulation, which provides for referral of the case to another hearing examiner for further consideration. 28 C.F.R. § 2.23(c). With that final referral, two persons concurred in a single recommendation and the case was then referred to the Regional Commissioner. There is no requirement that the two concurring votes be cast by examiners before whom the petitioner has appeared and thus no due process violation merely because Theriault was unable to present his case personally before each examiner. *See Billiteri, supra,* 541 F.2d at 945; *Butson v. Chairman, United States Parole Commission,* 457 F.Supp. 841, 845 (D.Colo.1978).

Theriault's threatening letters to members of his family provide a rational basis for the Parole Commission decision in this case. Theriault was provided adequate notice of the charges against him and a meaningful opportunity to be heard on the evidence presented. The reconsideration hearing was in accordance with Parole Commission regulations and within the constitutional requirements for such a reconsideration of Theriault's contingent liberty rights. *See also Drayton v. McCall,* 584 F.2d 1208 (2d Cir.1978). Accordingly, Theriault's claims attacking the reconsideration proceedings do not establish a violation of the Due Process Clause.

**Conclusion**

For the foregoing reasons, the clerk is directed to dismiss Theriault's petition with prejudice.

IT IS SO ORDERED.