**Virgil ALESSI,
Petitioner-Appellee-Cross-Appellant,**

v.

**J. Michael QUINLAN, Warden, Federal Correctional Institution, Otisville, New York, et al., Respondents-Appellants-Cross-Appellees.**

Nos. 1104, 1373, Dockets 82–2358, 83–2006.

United States Court of Appeals, Second Circuit.

Argued April 27, 1983.

Decided July 6, 1983.

Stephen A. Dvorkin, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., Peter C. Salerno, Asst. U.S. Atty., New York City, on brief), for respondents-appellants-cross-appellees.

John L. Pottenger, Jr., New Haven, Conn., for petitioner-appellee-cross-appellant.

Before LUMBARD, NEWMAN, and PRATT, Circuit Judges.

NEWMAN, Circuit Judge:

Government respondents appeal from the November 8, 1982, judgment of the District Court for the Southern District of New York (Robert W. Sweet, Judge) granting Virgil Alessi's petition for a writ of habeas corpus. The District Court concluded that the United States Parole Commission ("the Commission") had engaged in impermissible double counting when it set Alessi's presumptive parole date beyond the time period prescribed by the parole guideline for prisoners with Alessi's offense behavior and offender characteristics, 563 F.Supp. 911. See 28 C.F.R. § 2.20 (1982). For reasons set forth below, we reverse.

In 1972, in the District Court for the Eastern District of New York, Alessi pled guilty to a one-count information charging him with conspiracy to possess and distribute narcotics in the Eastern District. Pursuant to a plea agreement, he received a five-year suspended sentence with a mandatory three-year special parole term. In

1975, a federal indictment returned in the Southern District of New York charged Alessi with aiding and abetting a conspiracy to distribute narcotics in the Southern District. The acts alleged in the 1975 indictment all took place in the Eastern District during the period covered by the 1972 information, but the 1975 indictment alleged that Alessi was aware that the narcotics were destined for distribution in the Southern District. After unsuccessfully challenging his inclusion in the 1975 indictment as a violation of his plea agreement with the Eastern District, see *United States v. Alessi,* 544 F.2d 1139 (2d Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976), Alessi pled guilty. On January 5, 1977, the District Court for the Southern District of New York (Dudley B. Bonsal, Judge) sentenced Alessi to thirteen years on the narcotics charge to be followed by a six-year special parole term. *See Alessi v. United States,* 653 F.2d 66, 67 (2d Cir.1981) (affirming denial of collateral attack).[1]

In August 1980, the Commission set January 4, 1984, as Alessi's presumptive date of release, after eighty-four months of incarceration. The Commission determined that the severity of Alessi's offense behavior was "Greatest I" because he had taken a managerial role in a large-scale drug operation involving the distribution of more than 50 grams of pure heroin. The Commission also concluded that Alessi's offender characteristics warranted a salient factor score of nine. Under Parole Commission guidelines, a prisoner with Alessi's salient factor score and offense behavior could normally expect a presumptive parole release date no later than May 1981 after fifty-two months of imprisonment. *See* 28 C.F.R. § 2.20. However, the Commission elected to set a release date beyond the pertinent 40–52 month guideline range because of aggravating factors: Alessi's offense behavior involved more than twelve co-defendants and existed for more than four years. *See id.* § 2.20(c). In determining Alessi's offense

behavior and in setting a release date beyond the guideline range, the Commission considered the totality of Alessi's crime, including aspects of his activities covered by his 1972 conspiracy conviction.

Alessi then filed this petition for a writ of habeas corpus challenging the Commission's decision to deny him parole. Alessi attacked the decision on numerous grounds including a double jeopardy claim that the Commission was punishing him a second time for his 1972 conspiracy conviction, and a due process claim that the Commission had acted arbitrarily in setting a release date beyond its own guidelines. The District Court rejected most of Alessi's contentions, including his double jeopardy claim, but found his due process argument persuasive. In an opinion and order filed on July 6, 1982, the District Court held that the Commission had violated the Due Process Clause by using the same information— that Alessi had participated in a large-scale drug operation—first to classify his offense severity as "Greatest I" and again to set a release date beyond the pertinent guideline. Judge Sweet considered such "double counting" an abuse of discretion that amounted to a denial of due process. The District Judge then stated that he would grant Alessi's petition for release in twenty-one days unless the Commission corrected Alessi's presumptive parole release date.

On July 27, 1982, the Commission issued a second decision, adhering to its view that Alessi should be confined beyond his guideline range but setting a presumptive release date of December 5, 1982, after seventy-one months of confinement instead of the eighty-four months previously specified. The Commission gave the following explanation for its decision:

> After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense involved the following aggravating factors, over and above those

---

1. Alessi also pled guilty to one count of income tax evasion for which he was sentenced to a two-year term to run consecutively to his thirteen-year narcotics sentence. That conviction was subsequently vacated, *Alessi v. United States,* 593 F.2d 476 (2d Cir.1979), and is not claimed to have affected the parole decision challenged on this appeal.

facts supporting the Greatest I classification: You had a major role in an ongoing heroin distribution ring which was responsible for selling kilograms of heroin on a regular basis. This drug distribution ring utilized more than twelve co-conspirators and existed for a considerable length of time (January, 1968 to 1972). Alessi then returned to the District Court claiming that the Commission had merely repeated its previous error by using the same factors to rate his offense severity and to confine him beyond the guidelines. Judge Sweet agreed, and on October 22, 1982, ordered Alessi released. Pursuant to this order, for which no stay was sought, Alessi was released on parole several weeks ahead of the December 3, 1982, presumptive release date set by the Commission.

■ The initial question raised by this appeal is whether the District Court was correct in concluding that the Commission engaged in impermissible double counting when it set Alessi's parole date beyond the guideline period. While the Commission has considerable latitude in setting parole dates, *see Moore v. Nelson,* 611 F.2d 434, 437 (2d Cir.1979); *Baker v. McCall,* 543 F.Supp. 498 (S.D.N.Y.1981), aff'd mem., 697 F.2d 287 (2d Cir.1982), decisions in the District Court for the District of Connecticut have concluded that it is irrational—and therefore a violation of due process—for the Commission to confine a prisoner beyond the applicable guideline for the same reason used to select the prisoner's guideline in the first place. *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn.1974); *see Hearn v. Nelson,* 496 F.Supp. 1111, 1115 (D.Conn. 1980); *Brach v. Nelson,* 472 F.Supp. 569 (D.Conn.1979).[2]

In this case, the Commission determined Alessi's offense behavior severity to be

"Greatest I" because his crime involved "possession with intent to distribute more than 50 grams of 100 percent pure heroin, and [he] had a managerial role in this large-scale drug operation." *See* 28 C.F.R. § 2.20. The Commission confined Alessi beyond the applicable guideline because he had a "major role" in a drug ring that employed more than twelve co-conspirators over a period of four years and sold kilograms of heroin on a regular basis.[3] The District Court concluded that all of these aggravating factors had already been considered by the Commission when it concluded that Alessi's "managerial role" in a "large-scale drug operation" warranted a "Greatest I" offense severity rating. We disagree.

■ The aggravating factors cited by the Commission demonstrate that Alessi's criminal conduct was far more egregious than what was necessary to warrant a "Greatest I" severity rating. It is hardly irrational for the Commission to conclude that Alessi, whose crime involved kilograms of heroin, should be confined longer than a drug dealer who has distributed 51 grams of heroin. Moreover, it is clear that Congress wanted the Commission to have the authority to confine prisoners beyond the established guidelines when it concludes that a prisoner has been involved in an offense involving an unusual degree of sophistication. H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 359; *see Solomon v. Elsea,* 676 F.2d 282 (7th Cir. 1982); *Baker v. McCall, supra.* The District Court erred in ruling the Commission's parole decision to be arbitrary.

Furthermore, we are unpersuaded by Alessi's alternative argument, raised on his

---

**2.** The Government does not challenge this rule on this appeal, and, in view of our disposition of the appeal, we need not consider its validity.

**3.** At the time of the Commission's determination, "Greatest I" was the highest severity rating the Commission could give Alessi's offense behavior. Since then, the guidelines have been amended, and under the current version, 28 C.F.R. § 2.20 (1982), a prisoner like Alessi

could be placed in the "Greatest II" category for having a managerial interest in a large-scale drug operation involving more than one kilogram of heroin. Under the new guidelines, "Greatest II" offenders with Alessi's salient factor score face a guideline range with a minimum confinement period of fifty-two months and no maximum.

cross-appeal,[4] that the Commission violated the Double Jeopardy Clause by considering aspects of Alessi's conduct covered by his 1972 conviction in setting his parole date. Alessi acknowledges that the Double Jeopardy Clause does not prevent the Commission from considering a prisoner's prior convictions in determining his salient factor score. *See Priore v. Nelson,* 626 F.2d 211 (2d Cir.1980). Alessi argues, however, that the Clause nevertheless applies to Commission determinations of offense behavior and decisions to confine a prisoner beyond the guidelines.

In *Priore v. Nelson, supra,* we said, "The Double Jeopardy Clause applies to judicial proceedings, not parole." 626 F.2d at 211. *See also United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980) (discussing parole revocation); *Roach v. Board of Pardons and Paroles,* 503 F.2d 1367 (8th Cir. 1974) (parole release). Alessi contends that our statement in *Priore* was broader than required for decision of that case and should not be adopted as a general rule. We think the statement in *Priore* needs no modification. A denial of parole is a decision to withhold early release from the confinement component of a sentence. It is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause, even though the Commission's decision to set a later rather than an earlier parole release date may sometimes result in a longer period of confinement than might ultimately result from an increase in a court-imposed sentence. Nevertheless it is the sentence that is limited by the Double Jeopardy Clause, not the administrative decision to grant early release from confinement. In setting Alessi's parole date, the Commission did not violate the Clause by giving consideration to actions for which he had previously been punished.

The judgment of the District Court is reversed.

---

4. The cross-appeal was unnecessary, since Alessi was seeking no additional relief and was

entitled to assert in support of the judgment any valid ground established in the record.