732 F.2d 32
 Mark IUTERI, Petitioner-Appellant,
v.
Joseph A. NARDOZA, Parole Commissioner, Northeast Region,
United States Parole Commission, Victor Liburdi,
Warden, New Haven Community Correction
Center, Respondents-Appellees.
 No. 767, Docket 83-2120.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 17, 1984.
Decided April 4, 1984.
 
 Ira B. Grudberg, New Haven, Conn. (Karen Fox Tross, Jacobs, Grudberg & Belt, P.C., New Haven, Conn., of counsel), for petitioner-appellant.
 Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty. for the District of Connecticut, Bridgeport, Conn., of counsel), for respondents-appellees.
 Before TIMBERS, KEARSE and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appellant Iuteri appeals from a judgment of the United States District Court for the District of Connecticut, Warren W. Eginton, Judge, entered April 8, 1983, denying his petition for a writ of habeas corpus. Iuteri v. Nardoza, 560 F.Supp. 745 (D.Conn.1983).
 
 
 2
 He argues that his habeas corpus petition should have been granted because (1) the parole retardation procedure employed by the United States Parole Commission ("Commission") pursuant to 28 C.F.R. Sec. 2.28(f) denied his constitutional right to due process, (2) the information upon which the Commission relied to reopen his case did not constitute "new" information under 28 C.F.R. Sec. 2.28(f), and (3) the Commission abused its discretion in going beyond its own guidelines in extending his period of incarceration, on the basis of the allegedly new information, by four and one-half years. We do not find these contentions meritorious and, therefore, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 3
 The relevant facts in this case are set forth succinctly in the district court's opinion, Iuteri v. Nardoza, 560 F.Supp. 745 (D.Conn.1983), and familiarity therewith is assumed. See also Iuteri v. Nardoza, 662 F.2d 159 (2d Cir.1981). We do summarize the basic facts.
 
 
 4
 On July 8, 1980, Iuteri was convicted in the United States District Court for the District of Hawaii of conspiracy to commit wire fraud, interstate travel in furtherance of a scheme to defraud, aiding and abetting the use of interstate travel in furtherance of a scheme to defraud, and interstate transportation of fraudulently obtained money. After a two-day sentencing hearing--during which the government introduced evidence indicating that Iuteri had an extensive history of serious criminal behavior, including allegations of homicide, assault, fraud, kidnapping, narcotics offenses and extortion--Judge Samuel P. King of the District of Hawaii sentenced Iuteri pursuant to 18 U.S.C. Sec. 4205(b)(2) to consecutive terms of imprisonment totalling fifteen years.[1] Judge King explained that in his experience, the Commission usually imposed longer periods of incarceration when an inmate was sentenced under section 4205(b)(2) rather than under other sections. He also commented that "if there were ever a case for using the maximum, this is the case for the particular charges ... here."
 
 
 5
 Iuteri received his initial parole hearing in April, 1981, and was given a presumptive parole date of July 2, 1981. During the Commission's examination of Iuteri's case, the Commission did not have before it either the transcript of the sentencing hearing in the District Court of Hawaii or the report of the prosecuting attorney, Form 792, customarily completed and forwarded to the Commission by the United States Attorney who prosecuted the case. The Commission did consider a presentence report which contained allegations about murder charges pending against Iuteri in New Haven, Connecticut,[2] general allegations that Iuteri was a "bad man," and claims that he had threatened to kill anyone who testified against him.
 
 
 6
 The sentencing hearing material that the Commission did not have at the time of its initial parole determination--the Form 792 and the transcript of the hearing before Judge King--contained some allegations of which the Commission already was aware (the pending murder charges and the threat to kill anyone who testified against him). The Form 792 and the hearing transcript, however, contained additional information which was not before the Commission at the time of the initial parole determination.
 
 
 7
 In June, 1981, attorneys from the Federal Organized Crime Strike Force learned that Iuteri was about to be released on parole. After a brief investigation, the Strike Force attorneys discovered that the Commission had made its parole decision while unaware of some of the information contained in the sentencing hearing materials, namely, Judge King's sentencing remarks and the information that Iuteri had beaten a man (Satmary) with a blackjack, seriously injuring him, and had held a female (Foote) against her will for several weeks forcing her into prostitution. The government attorneys asked the Commission to consider this allegedly new information before releasing Iuteri on parole. On July 1, 1981, one day before Iuteri was to be released on parole, Joseph A. Nardoza, Parole Commissioner, Northeast Region, recommended pursuant to 28 C.F.R. Sec. 2.28(f)[3] that the Commission open Iuteri's case for reconsideration in light of "new and significant adverse information" which the Commission had received. Nardoza's recommendation and vote for reconsideration automatically delayed Iuteri's release date pending a decision by the National Commissioners as to whether to reopen and, if the National Commissioners decided to reopen, pending a final reconsideration hearing and decision. On July 10, 1981, the National Commissioners voted to reopen the case and scheduled the reconsideration hearing for the next available date, August 17, 1981. The Commission's Notice of Action explained that the reconsideration hearing would be held "[t]o consider Form USA 792 submitted by Special [United States] Attorney Bent and the sentencing remarks by the Federal District Judge in Hawaii. Also letter from Attorney Gregorie, U.S. Department of Justice dated June 26, 1981." Iuteri was duly notified of the rehearing and of the documents that would be at issue. The August 17th hearing was postponed at Iuteri's request until October 22, 1981. The hearing examiners considered the new information at the hearing and recommended that the Commission delay Iuteri's parole release for an additional four and one-half years. The Commission adopted the hearing examiners' finding and in a Notice of Action dated November 2, 1981, explained its decision, as follows:
 
 
 8
 Your offense behavior has been rated as moderate severity because it involved a fraud of about $15,000. Your salient factor score (SFS-81) is 10 .... You have been in custody a total of 18 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 10-14 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because you are a poorer risk than indicated by your salient factor score in that: on the basis of the information reviewed at your special reconsideration hearing (including Form 792 submitted by Special Attorney Bent, sentencing transcrip[t] of hearing of July 7, 1980 and June 26, 1981 letter of Department of Justice Attorney Gregorie) the Commission finds that you attac[k]ed a man viciously with a blackjack shattering his nose and also forced a young woman into prostitution. These actions evince a criminal orientation not generally seen by the Commission in offenders with your salient factor score of 10.
 
 
 9
 On July 9, 1981, prior to the Commission's final determination, Iuteri filed a habeas corpus petition in the District Court for the District of Connecticut. Pursuant to his request, the district court granted bail pending the outcome of the habeas corpus petition. On appeal, this court reversed the grant of bail, holding that Iuteri's petition failed to raise substantial claims with a likelihood of success. Iuteri v. Nardoza, 662 F.2d at 161. This court concluded that Iuteri's first claim--that he was denied due process when his parole date was automatically delayed without a hearing pursuant to 28 C.F.R. Sec. 2.28(f) pending determination of whether his case should be reopened--was insubstantial for bail purposes. The court also concluded that Iuteri was not likely to succeed on his claim that the information relied upon to reopen his case did not constitute new information pursuant to 28 C.F.R. Sec. 2.28(f). Id.
 
 
 10
 On March 10, 1982, while his final appeal to the Commission was pending, Iuteri filed an amended habeas petition. He renewed the two claims set out in the initial petition--that the retardation procedures under section 2.28(f) violated his due process rights, and that the information on which the Commission relied to reopen his case did not constitute "new" information for section 2.28(f) purposes. He also argued that the Commission had abused its discretion by going above the applicable guidelines in extending, on the basis of the new information, his period of incarceration by four and one-half years.
 
 
 11
 In a thorough opinion, Iuteri v. Nardoza, 560 F.Supp. 745, Judge Eginton rejected each of these contentions and denied Iuteri's petition.
 
 
 12
 Iuteri renews his three principal contentions on appeal. We need not be delayed by his first two claims--that the parole retardation procedure denied his constitutional right to due process, and that the information upon which the Commission relied to reopen his case did not constitute "new" information--since we reject them substantially for the reasons stated in Judge Eginton's opinion. Iuteri v. Nardoza, 560 F.Supp. at 748-54. We also affirm the district court on the third ground--that the Commission did not act irrationally in going above the guidelines in setting Iuteri's release date--but we write briefly on the issue to emphasize that the Commission operates with considerable discretion in this area.
 
 II. DISCUSSION
 
 13
 As we have noted previously, see, e.g., Bialkin v. Baer, 719 F.2d 590, 592 (2d Cir.1983), Congress has vested the sole power to grant or deny parole in the sound discretion of the Commission. See Billiteri v. United States Board of Parole, 541 F.2d 938, 944 (2d Cir.1976). Congress has
 
 
 14
 directed the [C]ommission to establish guidelines for exercising its powers .... Under its guidelines, the [C]ommission determines for each prisoner, the severity of his offense behavior (offense characteristics) and classifies it in any of six categories ranging from "low" to "Greatest II." The [C]ommission also determines a prisoner's parole prognosis (offender characteristics) and calculates his "salient factor score" on a scale from 0 to 10. For various combinations of offense severities and salient factor scores the guidelines indicate a range of "customary range of time to be served before release" on parole. 28 C.F.R. Sec. 2.20(b)(1982).
 
 
 15
 Bialkin v. Baer, 719 F.2d at 592.
 
 
 16
 Although the Commission generally relies on the guidelines in determining the release date of a prisoner, see 18 U.S.C. Sec. 4206(a) (1982), it is not limited exclusively by them. Campbell v. United States Parole Commission, 704 F.2d 106, 111 (3d Cir.1983). Congress expressly provided in section 4206(c) that the Commission can go beyond the guidelines if it determines there is good cause for doing so. 18 U.S.C. Sec. 4206(c) (1982); Lieberman v. Gunnell, 726 F.2d 75, 77 (2d Cir.1984). The legislative history suggests that the definition of good cause "can not be a precise one, because it must be broad enough to cover many circumstances." H.R.Rep. No. 838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S.Code Cong. & Ad.News 335, 351, 359. Section 2.20(c) of the guidelines itself states in clear language that "[t]hese time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. Sec. 2.20(c) (1983).
 
 
 17
 "The appropriate standard for review of the [C]ommission's decisions is whether there has been an abuse of discretion." Bialkin v. Baer, 719 F.2d at 593 (citing Solomon v. Elsea, 676 F.2d 282, 290 (7th Cir.1982), and Zannino v. Arnold, 531 F.2d 687, 690-91 (3rd Cir.1976)). Consequently, as a reviewing court, we "may not substitute [our] own judgment for that of the [C]ommission," and we will give "[d]eference to the [C]ommission's interpretation of its own regulations ... unless that interpretation is shown to be unreasonable." Bialkin v. Baer, 719 F.2d at 593; see Timpani v. Sizer, 732 F.2d 1043, 1047-48 (2d Cir.1984; accord Staege v. United States Parole Commission, 671 F.2d 266, 268 (8th Cir.1982) (courts defer to the Commission's "interpretation of its own regulations, and that interpretation should not be rejected unless shown to be unreasonable"); see also Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (courts show great deference to agency's "construction of an administrative regulation"). We will uphold the Commission's decision to go above the guidelines in setting parole where it is not irrational for the Commission to do so. See, e.g., Bialkin v. Baer, 719 F.2d at 594; Alessi v. Quinlan, 711 F.2d 497, 500 (2d Cir.1983). Of course, consistent with section 4206(c), the Commission must summarize the information used and indicate the specific aggravating factors relied upon in going above the guidelines. See 18 U.S.C. Sec. 4206(c) (1982).
 
 
 18
 Iuteri contends that the Commission acted without rational justification by going above the guidelines on the basis of the Satmary and Foote incidents. He argues that even if he had been tried, convicted and sentenced on the charges of assault and prostitution, pursuant to the guidelines he would have received a substantially earlier parole release date than the one he actually received after the Commission reconsidered his case.[4]
 
 
 19
 Iuteri thus invites us to proceed upon the basis of his strained and speculative scenario and on this ground to second-guess the Commission's decision. We decline to do so. In reviewing the Commission's parole determination, our role is merely to inquire "whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d at 691. It would be wholly unwarranted for us to guess or speculate about the length of time Iuteri would have been incarcerated before being paroled under the scenario he urges upon us. Upon the facts before us we cannot determine whether Iuteri would have received the same parole date, a later one, or an earlier one since such a decision would depend, inter alia, upon the circumstances relating to his hypothetical convictions.
 
 
 20
 In rejecting Iuteri's argument, we simply reaffirm the view of this and other circuits, see, e.g., Bialkin v. Baer, 719 F.2d at 594; Alessi v. Quinlan, 711 F.2d at 500; Campbell v. Parole Commission, 704 F.2d at 112; Stroud v. United States Parole Commission, 668 F.2d 843, 847 (5th Cir.1982), that we will uphold the Commission's decision to go above the guidelines in setting parole where it is not irrational for the Commission to do so. Herein, the Commission explained to Iuteri that it decided to go above the guidelines because in its view, he was a poorer risk than indicated by his salient factor score. As required by section 4206(c), it specified the information upon which it relied. It found that he had "attac[k]ed a man viciously with a blackjack shattering his nose and also forced a young woman into prostitution."[5] The Commission rationally concluded, within its discretion, that these incidents indicated "a criminal orientation not generally seen by the Commission in offenders with [Iuteri's] salient factor score of 10." In short, the Commission acted within its authority by relying on these aggravating factors to go above the guidelines in setting Iuteri's parole release date. See Bialkin v. Baer, 719 F.2d at 594; Alessi v. Quinlan, 711 F.2d at 500.
 
 III. CONCLUSION
 
 21
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 
 [1]
 Section 4205(b)(2) leaves the question of parole entirely at the discretion of the Commission. 18 U.S.C. Sec. 4205(b)(2) provides, in pertinent part, as follows:
 Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may ... (2) ... fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.
 
 
 [2]
 The presentence report stated that the victim had been shot six times "in gangland style." The first trial ended in a hung jury; Iuteri will be retried at a future date
 
 
 [3]
 28 C.F.R. Sec. 2.28(f) provides, in pertinent part, as follows:
 Upon receipt of new and significant adverse information that is not covered by paragraphs (a) through (e) of this section, the Regional Commissioner may refer the case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing. Such referral by the Regional Commissioner shall automatically retard the prisoner's scheduled release date until a final decision is reached in the case. The decision to schedule a case for a special reconsideration hearing shall be based on the concurrence of three out of five votes, and the hearing shall be conducted in accordance with the procedures set forth in Secs. 2.12 and 2.13. The entry of a new order following such hearing shall void the previously established release date.
 
 
 [4]
 Iuteri attempts to bring this case within the scope of a series of decisions in the District Court for the District of Connecticut, see Hearn v. Nelson, 496 F.Supp. 1111, 1115 (D.Conn.1980); Brach v. Nelson, 472 F.Supp. 569 (D.Conn.1979); Lupo v. Norton, 371 F.Supp. 156 (D.Conn.1974), which state that it is irrational for the Commission to go above the guidelines for the same reason used initially to select the prisoner's applicable guidelines. We need not, however, consider the validity of those cases since, unlike in Hearn, Brach and Lupo, the Commission herein did not use the same factors twice--first to determine the applicable guideline and then to go above it. Rather, the Commission only considered the Satmary and Foote incidents after it had determined the applicable guideline, and then it did so to go above the guidelines. See Alessi v. Quinlan, 711 F.2d at 500
 
 
 [5]
 The district court correctly rejected Iuteri's challenge to the credibility of the evidence about the Satmary and Foote incidents. Iuteri v. Nardoza, 560 F.Supp. at 755