William W. BRIDGE

v.

UNITED STATES PAROLE COMMISSION and J.T. Holland, Warden of Federal Correctional Institution at Loretto, Pennsylvania.

United States of America * The United States Parole Commission and Warden, F.C.I., Fairton, N.J., Appellants.

No. 92–3110.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6), Oct. 6, 1992.

Dec. 1, 1992.

* (Per Rule 12(a), F.R.A.P.)

Thomas Corbett, Jr., U.S. Atty., Michael Ivory, Asst. U.S. Atty., Sharon Gervasoni, U.S. Parole Com'n, Chevy Chase, Md., for appellants.

William W. Bridge, pro se.

Before: GREENBERG, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

The United States Parole Commission ("Parole Commission") calculated a parole eligibility date for William Bridge ("Bridge") based partially on a finding that Bridge had committed a bombing, a charge to which he had not pled guilty. In a proceeding prior to the matter now under review, the district court vacated Bridge's parole date because the parole hearing record failed to provide a rational basis for the conclusion that Bridge participated in the bombing.

After gathering additional evidence implicating Bridge in the bombing, the Parole Commission conducted a rehearing and once again found that Bridge was responsible for the bombing. The district court, when reviewing this second determination by the Parole Commission, held that its first order established conclusively that no evidentiary basis supported this finding and implicitly barred evaluation of new evidence. Therefore, the district court concluded that the Commission's failure to appeal the earlier order had waived its right to challenge that decision. The Parole Commission now appeals from this second ruling arguing that (1) this court has jurisdiction to review the merits of the appeal; and (2) the district court erred by precluding the Commission from reconsidering new evidence linking Bridge to the bombing. We agree with the Parole Commission and will reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellee Bridge is a prisoner at the Federal Correctional Institution at Loretto, Pennsylvania serving a six year sentence for possession of an unregistered firearm. On February 19, 1990, the Parole Commission initially considered Bridge's eligibility for parole. Partially based on a finding that Bridge had been involved in the fire bombing of the Doubrava Construction Company ("Doubrava"), the Parole Commission rated his offense severity level as Category Six under its regulations.[1] Although the indictment had charged Bridge with committing the Doubrava bombing, these charges were dismissed pursuant to his plea agreement and the court did not consider this alleged criminal conduct when sentencing Bridge. Bridge's offense sever-

---

1. The Parole Guidelines relating to property destruction by fire or explosives, 28 C.F.R. § 2.20, ch. 3, ¶ 301(b) (1992), provide in pertinent part:
 If the conduct (i) involves any place where persons are present or likely to be present; or (ii) involves a residence, building, or other structure; or (iii) results in bodily injury[ ], grade as Category Six.

ity classification, coupled with his salient factor score of eight, resulted in a 40–52 month parole guideline range. *See* 28 C.F.R. § 2.20 (Guidelines for Decisionmaking).[2] The Parole Commission ordered that Bridge remain incarcerated until the expiration of his sentence, a time period of approximately 48 months. Absent the determination that Bridge had participated in the Doubrava bombing, the seriousness of his offense, based solely on the possession of an unregistered firearm charge to which he pled guilty, would have placed him in Category Five, *see* 28 C.F.R. § 2.20, ch. 8, ¶ 812 (possession of sawed-off shotgun or machine gun graded as Category Five), producing an applicable parole guideline range of 24–36 months.[3]

Bridge insisted throughout his parole hearing that he had not been involved in the Doubrava fire bombing incident. After the Commission made its finding to the contrary, Bridge appealed this decision to the National Appeals Board of the United States Parole Commission ("Appeals Board"). Bridge argued that the Parole Commission improperly assigned him an offense severity level of Category Six because the record lacked sufficient evidence to support the Commission's finding that he was responsible for the Doubrava fire bombing. The Appeals Board affirmed the Parole Commission's order. Having exhausted his administrative remedies, Bridge filed a petition for a writ of habeas corpus in federal district court, reiterating that the Commission's determination that he participated in the bombing was arbitrary and irrational.

In its memorandum order dated March 13, 1991 (the "first order"), the district court held that the parole hearing record failed to provide a rational basis for linking Bridge to the fire bombing incident. The Parole Commission had relied solely on information contained in Bridge's presentence report in making its finding. The information consisted of an Assistant Unit-

ed States Attorney's summary of a statement by a Customs Service special agent that Bridge had admitted that he personally was responsible for the fire bombing. This embedded hearsay was accompanied by the prosecutor's characterization of the circumstances surrounding the confession as indicative of a high degree of reliability. The district court deemed this evidence insufficient because there was no firsthand description of the admission or the circumstances under which it was made that would demonstrate the confession's reliability. Nor was there other extrinsic evidence that linked Bridge to the fire bombing in any way. The district court therefore remanded the matter to the Parole Commission with instructions to "recompute Petitioner's presumptive parole date based on a Category Five offense behavior severity level, consistent with this memorandum." *Bridge v. United States Parole Commission*, Civ. No. 90–214J, slip op. at 4 (W.D.Pa. March 13, 1991). The Parole Commission did not appeal this order.

To comply with the district court's order, the Parole Commission issued a Notice of Action informing Bridge that his offense severity rating was Category Five unless and until new adverse evidence surfaced. The Parole Commission then requested and received from the United States Attorney's Office additional information implicating Bridge in the Doubrava bombing. The new information consisted of a report, prepared by the Bureau of Alcohol, Tobacco and Firearms, which summarized its investigation of the Doubrava fire bombing. In the report, Special Agent Patricia Galupo and Special Agent Stephen Wells each state in affidavits that Bridge admitted to them that he had constructed a handmade explosive and bombed the Doubrava company. The report also included a statement by Patty Kowalec, a Doubrava employee. Ms. Kowalec recounted under oath that a few days before the bombing, two men came to her place of employment looking for Mr. Doubrava. The men failed to identify

---

**2.** A prisoner's parole guideline range corresponds to the customary total number of months that an inmate must serve before being released from confinement.

**3.** The Commission must set a prisoner's parole date within the applicable range unless aggravating or mitigating circumstances justify a departure. 28 C.F.R. § 2.20(d).

themselves and acted suspiciously, prompting Ms. Kowalec to record the license plate number of their truck. Agent Galupo traced the license plate number and discovered that the truck was registered to Bridge.

The Parole Commission believed that this newly acquired information satisfied the evidentiary deficiencies identified by the district court. The report contained two firsthand accounts of Bridge's confession and independent evidence linking Bridge to the bombing. The Commission therefore disclosed the information to Bridge and scheduled a reconsideration hearing. At this hearing, the Parole Commission formally heard the new evidence and afforded Bridge the opportunity to respond to it. The Commission determined that the updated record supported a finding that Bridge had committed the Doubrava bombing. It again set Bridge's offense severity level at Category Six and ordered that he remain incarcerated until the expiration of his sentence.

Bridge filed a renewed petition for a writ of habeas corpus, arguing that the district court's prior order conclusively established that the Commission must utilize a Category Five offense severity level. The Commission contended that it was entitled to expand its record, and that the newly acquired evidence justified the upward adjustment.

On December 30, 1991, the district court held that its first order had decided conclusively that there was no adequate evidentiary basis on which to find Bridge responsible for the bombing of the Doubrava Company. The district court reasoned that the Commission's failure to appeal the first order prohibited it from considering additional information to prove Bridge's involvement in this incident although it was free to evaluate alternate reasons for increasing Bridge's offense severity level. The court further held that the Parole Commission's right to reopen cases pursuant to 28 C.F.R. § 2.28(f) does not encompass the right to reconsider the identical issue that a district court has decided adversely to the Commission. The court expressed concern that any other rule would effectively abolish habeas corpus relief because the Commission could use the habeas proceeding "as a trial run of its evidence with the ability, following an adverse ruling, to repeatedly seek the slightest amount of additional evidence, and then reach the same result." *Bridge v. United States Parole Commission*, Civ. No. 90–214J, slip op. at 5 (Dec. 30, 1991). On the other hand, the court noted in dicta that the Commission had not acted vindictively and that the new evidence did provide a rational basis from which a reasonable fact finder could conclude that Bridge participated in the Doubrava bombing.

The Commission filed a timely notice of appeal from the district court's December 30, 1991 order (the "second order").

## II. APPEALABILITY

The Parole Commission argues that the district court erred by depriving the Commission of its statutory right to reconsider factual determinations relating to parole when new evidence emerges. Before reaching the merits of this contention, we must determine whether this court has jurisdiction to review this issue. Bridge argues that the district court's March 1991 order is a final order and that by failing to appeal that ruling, the Commission waived its right to challenge the substance of that order in this court. Bridge then contends that the first order conclusively established his offense severity level and implicitly prohibited the Parole Commission from reconsidering this determination even in light of newly acquired evidence. Combining these two arguments, Bridge concludes that we lack jurisdiction to review the propriety of the district court's decision to preclude the Commission from reclassifying his offense severity level based on new adverse evidence linking him to the Doubrava bombing.

 We agree that the district court's first order was a final order [4] and that this court may not review that ruling. Under

4. In its reply brief, the Parole Commission even concedes this point.

28 U.S.C. § 1291 (1988), this court has jurisdiction to review "all final decisions of the district courts of the United States...." Remands to administrative agencies are not ordinarily appealable final orders. *AJA Associates v. Army Corps of Engineers*, 817 F.2d 1070, 1073 (3d Cir.1987). An exception to this generally applicable rule applies when a district court finally resolves an important legal issue in reviewing an administrative agency action and denial of an appeal would foreclose appellate review as a practical matter. *Sullivan v. Finkelstein*, 496 U.S. 617, 625–29, 110 S.Ct. 2658, 2664–66, 110 L.Ed.2d 563 (1990); *AJA Associates*, 817 F.2d at 1073.

█ The district court's first order meets the criteria for finality articulated in *Finkelstein*. First, a court's authority to interfere with the Parole Commission's broad discretion to evaluate offense severity qualifies as an important legal issue. *Marshall v. Lansing*, 839 F.2d 933, 941 n. 9 (3d Cir.1988). It is also clear that the district court's first order finally disposed of Bridge's habeas petition. In habeas corpus proceedings, the district court has not finally resolved an issue until it either grants or denies the writ. *Id.* at 941; *accord Allen v. Hadden*, 738 F.2d 1102, 1106 (10th Cir. 1984). In this case, the court concluded that the evidence in the record did not provide a rational basis for the Commission's finding that Bridge was involved in the bombing. Therefore, the court remanded the matter and ordered that the Commission place Bridge in a Category Five offense severity level. Recognizing that by granting the writ it had completed its task, the district court further ordered that the clerk mark the matter closed. Finally, if on remand the Parole Commission placed Bridge in Category Five, it is doubtful if the Commission could appeal its own order. *See Finkelstein*, 496 U.S. at 625, 110 S.Ct. at 2664.

The district court's order was final. The fact that Bridge subsequently filed a second related habeas petition does not alter our analysis of the finality of the court's first order. Since the Commission failed to appeal the first order within the required time period, *see* Fed.R.App.P. 4(a)(1) (allowing 60 days to file a notice of appeal in a civil action in which the United States is a party), it waived its right to dispute the court's conclusions contained in that order.

█ Although we are precluded from reviewing the district court's first order, we nevertheless possess jurisdiction to consider the merits of the Commission's appeal. Bridge argues that the first order conclusively set his offense severity level at Category Five and implicitly precluded any reconsideration hearings. The district court's second order, as Bridge characterizes it, simply enforced its prior ruling. When a court reenters a judgment without altering the substantive rights of the litigants, the entry of the second judgment does not affect the time within which a party must appeal the decisions made in the first order. *Federal Trade Comm'n v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952); *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir.1990). If a second judgment revises the litigants' legal rights or plainly resolves an ambiguity that had not been clearly settled, however, then an appeal from the second judgment may challenge any issues resolved or clarified by the second judgment. *See Minneapolis–Honeywell Regulator*, 344 U.S. at 213, 73 S.Ct. at 249; *Offshore Prod. Contractors*, 910 F.2d at 229.

█ Whether issues have been clearly and finally decided by a prior ruling must be determined from the perspective of a reasonable litigant. A district court's subjective intent is irrelevant. If a court order does not clearly address and decide an issue, it would be unfair to find that a party's failure to appeal that decision forever waives its right to challenge a determination that it could reasonably believe was not yet decided. *See Marshall*, 839 F.2d at 941 (no waiver of appeal when the Parole Commission reasonably could have thought that the district court's order was not final).

█ The district court's first order did not unambiguously prohibit the Parole

Commission from reconsidering Bridge's offense severity level if new evidence became available.[5] The district court's four page memorandum opinion simply held that there was no rational basis from which the Commission could conclude that Bridge had bombed the Doubrava Company's premises. That conclusion necessarily was based on the record before the district court at the time of its decision. The first order instructs the Commission to recalculate the parole guideline range utilizing a Category Five offense severity rating because, at the time of the order, the evidence to support a higher rating based on involvement in the Doubrava bombing incident was inadequate. Neither party discussed the implications of a future discovery of new evidence that would strengthen the evidentiary foundation linking Bridge to the bombing. Moreover, the court did not explicitly proscribe future reconsideration by the Commission based on new evidence.

Since the judgment does not explicitly or by necessary implication prohibit future reconsideration, the Commission reasonably could have believed that this order did not permanently foreclose a reconsideration hearing if additional evidence was discovered. The reasonableness of the Commission's interpretation of the first order is bolstered by the fact that fundamental principles of administrative law prevent a federal court from freezing an administrative record. *See* discussion *infra* Section III. The Commission was entitled to assume that the district court's order did not contain an implicit ruling that violated well settled law. Therefore, when the district court's second order explicitly stated that the Commission could not consider new evidence that cured the previously identified evidentiary deficiencies, this ruling did not simply execute a prior order, but altered the substantive rights of the parties. Accordingly, an appeal of the second order may properly include a challenge to the court's authority to limit the Parole Commission's ability to reconsider a parole sentence.

To the extent that Bridge relies on the doctrine of law of the case to permanently set his offense severity level at Category Five, his reliance is misplaced. The law of the case doctrine provides that a court should not re-examine an issue already decided in the same case. It is axiomatic that this principle only applies "to issues that were actually discussed by the court in the prior appeal [and] to issues decided by necessary implication." *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir.1984) (quoting *Todd & Co., Inc. v. SEC*, 637 F.2d 154, 157 (3d Cir.1980)). As we discussed above, the district court's first order did not address or explicitly or by necessary implication decide whether the Parole Commission could reconsider the sufficiency of the evidentiary record if it acquired new evidence implicating Bridge in the bombing. The first order therefore can not be the law of the case as to this question.

Even if we agreed that the district court's first order decided that the Parole Commission could not reconsider the sufficiency of the evidentiary record, the law of the case doctrine still would not control. Commonly recognized exceptions permit reconsideration of an issue previously resolved in the same case if: (1) the right to move for reconsideration would be effectively denied; (2) new evidence is available; (3) a supervening new rule of law is announced; or (4) the decision was clearly erroneous and would work a manifest injustice. *Schultz*, 737 F.2d at 345; *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169–70 (3d Cir.1982). When new evidence is available, "the question has not really been decided earlier and is posed for the first time." *Hayman Cash Register*, 669 F.2d at 169 (quoting *United States v. Wheeler*, 256 F.2d 745, 748 (3d Cir.), *cert.*

---

5. The district court's order stated:
 We therefore ORDER that this matter be remanded to the Parole Commission with instructions to recompute Petitioner's presumptive parole date based on a Category Five offense behavior severity level, consistent with this memorandum.
 *Bridge v. United States Parole Commission*, Civ. No. 90–214J, slip op. at 4 (W.D.Pa. March 13, 1991).

*denied,* 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958)).

█ This case squarely fits the exception premised upon the availability of new evidence. The Parole Commission received the report prepared by the Bureau of Alcohol, Tobacco and Firearms after the district court's first order. This report included statements by special agents who heard Bridge admit to having committed the Doubrava bombing. The district court had not considered this highly probative evidence when making its initial determination that Bridge should be placed in Category Five based on the seriousness of his criminal conduct. The law of the case doctrine therefore does not preclude us from considering the substance of the Commission's appeal. We now turn to the merits of the appeal.

### III. CONCLUSIVE DETERMINATION OF THE OFFENSE SEVERITY LEVEL

█ The Parole Commission argues that the district court lacked the power to preclude the Commission from considering new evidence implicating Bridge in the Doubrava bombing. Because this poses a pure question of law, our review is plenary. *See United States v. Brown,* 862 F.2d 1033, 1036 (3d Cir.1988). We agree with the Commission.

Congress invested the Parole Commission with the statutory authority to grant or deny any application for parole, 18 U.S.C. § 4203(b)(1) (1988) [6], and to modify or revoke an order paroling any eligible prisoner, *id.* § 4203(b)(3). Indeed, the Parole Commission is the only tribunal that possesses the power to grant or deny a parole. *See* 18 U.S.C. § 4218(d) (1988) (for purposes of judicial review, Commission's grant or denial of parole is action "committed to agency discretion"); *Iuteri v. Nardoza,* 732 F.2d 32, 36 (2d Cir.1984) ("Congress has vested the sole power to grant or deny parole in the sound discretion of the Commission."); *Juelich v. United States*

*Board of Parole,* 437 F.2d 1147, 1148 (7th Cir.1971) ("[T]he determination of a parole eligibility date is wholly within the discretion of the Board.").

To calculate the parole eligibility date of prisoners, the Commission must consider all relevant and reasonably available information. *See* 18 U.S.C. § 4207 (1982). Additionally, the Commission's regulations specifically provide that it may reopen a parole decision if it receives new and significant information that could adversely affect the timing of an inmate's release from prison. 28 C.F.R. § 2.28(f) (1992). In such circumstances, the proper procedural route is for the Commission to schedule a special reconsideration hearing at which the new evidence may be presented and refuted. *Id.*

█ The Commission may reopen a parole decision for consideration of new information at any time prior to a prisoner's release, even if the new information was in existence, but was not considered, when the initial parole decision was made. *Schiselman v. United States Parole Comm.,* 858 F.2d 1232, 1238 (7th Cir.1988); *Goble v. Matthews,* 814 F.2d 1104, 1108 (6th Cir.1987); *Iuteri,* 732 F.2d at 36; *Fardella v. Garrison,* 698 F.2d 208, 211 (4th Cir.1982); *McClanahan v. Mulcrome,* 636 F.2d 1190, 1191 (10th Cir.1980). The rationale underlying these decisions is that the Commission is not an investigative agency, but reviews information furnished by other government agencies. *Fardella,* 698 F.2d at 211. Consequently, the Commission may not be faulted or penalized for another agency's failure to provide the Commission with all of the evidence in their possession.

█ In this case, the district court overrode the Commission's power to reopen a case based on new adverse information by permanently barring it from reconsidering additional evidence. A district court, however, may not ordinarily freeze the Parole Commission's record and prevent it from admitting new evidence on remand.

---

**6.** Title 18 U.S.C. §§ 4201–4218 have been repealed, but neither party contests that these provisions remain in effect as to Bridge's of-

fense. *See* Pub.L. No. 98–473 § 235(b)(1), 98 Stat. 1838, 2032 (1984); Pub.L. No. 101–650 § 316, 104 Stat. 5089, 5115 (1990).

The Supreme Court has termed it a guiding principle of administrative law that:

> an administrative determination in which is embedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge.... Application of that general principle in this [labor] case best respects the congressional scheme investing the Board and not the courts with broad powers to fashion remedies that will effectuate national labor policy. It also affords the Board the opportunity, through additional evidence or findings, to reframe its order better to effectuate that policy.

*National Labor Relations Board v. Food Stores Employees Union, Local 347*, 417 U.S. 1, 9–10, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974) (citations omitted). Thus, legal error in an agency decision does not prevent the agency from expanding its record and rethinking its original order.

■ A corollary to this tenet of administrative law is that the appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion. *See Federal Power Comm. v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 87, 97 L.Ed. 15 (1952). "[T]he function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration." *Id.* In *Idaho Power*, the Federal Power Commission granted an applicant a license to build a power plant. The license had certain conditions, which the court of appeals found were illegally imposed. As a remedy for the violation, the court modified the licenses by striking the offensive conditions. The Supreme Court held that the court of appeals "usurped an administrative function" by specifying the remedy for the legal error instead of remanding that decision to the agency. *Id.* On remand, the Federal Power Commission could choose to grant the licenses without the illegal conditions or decline to issue the license at all. A district judge, however, may not perform an administrative function. *See Horizons Int'l, Inc. v. Baldridge*, 811 F.2d 154, 160 (3d Cir.1987) (Article III courts may not perform nonjudicial functions, such as exercising Department of Commerce's power to grant exemptions from the antitrust laws); *Berger v. Heckler*, 771 F.2d 1556, 1580 (2d Cir.1985) (district court may order an agency to promulgate regulations, but requirement of specific language unnecessarily intrudes into administrative sphere).

■ The Supreme Court's decisions in *Food Stores Employees* and *Idaho Power* are equally applicable to all administrative agencies, including the Parole Commission. In *Billiteri v. United States Board of Parole*, 541 F.2d 938 (2d Cir.1976), the district court remanded a prisoner's case to the Parole Commission for development of the record. On appeal from the remand, finding insufficient evidence to support the Commission's factual determinations, the district court conducted its own parole hearing and resolved the relevant factual disputes necessary for parole sentencing. The court of appeals found this action improper because a district court lacks the power to grant parole or judicially determine eligibility for parole. *Id.* at 943–44. A federal court may review decisions of the Parole Commission for abuse of discretion, but the relief a court may grant is limited: "The only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of noncompliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody." *Id.* at 944; *see also Zannino v. Arnold*, 531 F.2d 687, 692 (3d Cir.1976) (when some rational basis to deny parole exists, district court may remand to Parole Board for fuller explanation of reasons for denial of parole, but may not grant parole to a prisoner).

■ This court's single decision upholding a district court's conclusive factual finding relating to a parole decision is clearly distinguishable. *See Marshall v. Lansing*, 839 F.2d 933 (3d Cir.1988). In *Marshall*, the district court remanded a

habeas proceeding to the Parole Commission with instructions to clearly explain the reasoning for their offense categorization. Notwithstanding this court order, the Commission reassigned the same offense severity level without pointing to any evidence supporting their decision. In light of the protracted history of the case and the court's impression that the Commission intentionally had evaded the court's mandate, the court ordered the Commission to reassess the prisoner's parole status under a specific offense severity category. We affirmed this portion of the district court's decision. *Id.* at 944–45. When a district court remands a case to the Parole Board for failure to adequately explain its decision and, on remand, the Commission again declines to articulate a basis for the identical conclusion, a district court may permanently decide this issue on the record before it.

In this case, the Commission was not unwilling to explain the evidentiary basis for or the reasoning behind its conclusions. It simply reconsidered a factual finding, previously found to lack adequate record support, in light of new evidence. Absent the repeated resistance to following court orders present in *Marshall*, a district court may only remand a parole petition with instructions for the Parole Board to take action consistent with the court's opinion.

The district court here "usurped an administrative function," *Idaho Power*, 344 U.S. at 20, 73 S.Ct. at 87, when its second order held that the Commission could not evaluate new evidence implicating Bridge in the Doubrava bombing. Congress vested the authority to grant or deny parole exclusively in the Parole Commission, 18 U.S.C. § 4203(b)(1), and the Commission may reopen a case based on new adverse evidence, 28 C.F.R. § 2.28(f). The district court's decision divested the Commission of its statutory right to make its own factual determinations in light of new evidence.

The court's substitution of its discretion for that of the Commission's is error.

A beneficent concern motivated the district court to permanently set Bridge's offense level. The court speculated that habeas corpus review would be effectively abolished if the Commission could use the habeas proceeding as a trial run for its evidence, and repeatedly conduct rehearings, adding a modicum of additional evidence to justify the same result. This reasoning rests on the implicit assumption that the Parole Commission will act in bad faith by strategically withholding evidence for presentation at a future hearing. We declined to credit the similar argument that dismissal of a pending habeas proceeding when the Commission reopens the case for reconsideration *pendente lite* would effectively cut off habeas review. *United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167, 1174 n. 12 (3d Cir.1989). In *Keohane*, we refused to assume that the Commission strategically would reopen cases to prevent prisoners access to the federal courts for habeas review. *Id.*

▪▪▪▪ Just as the presumption that the Commission will reopen cases *pendente lite* to deny habeas review is unwarranted, so is the district court's presumption that the Commission will repeatedly seek the slightest amount of additional evidence to justify the same result. Government officials are presumed to act in good faith. *See Ward v. Rock of Racism*, 491 U.S. 781, 811, 109 S.Ct. 2746, 2764, 105 L.Ed.2d 661 (1989); *Hoffman v. United States*, 894 F.2d 380, 385 (Fed.Cir.1990) (citations omitted). This presumption of good faith extends to Parole Board members. *See Zannino*, 531 F.2d at 692 n. 22; *Paine v. Baker*, 595 F.2d 197, 203 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). Bridge has made no showing of bad faith on the part of the Commission.[7] Absent an actual demonstration of bad faith, a finding that the Parole Board made a factual determination insuf-

---

7. The district court's prediction of widespread misconduct by the Parole Commission has not come true in this case. The district court found that the new evidence obtained by the Commission did provide a rational basis to support the finding that Bridge committed the Doubrava bombing. It further found that the Commission did not act vindictively by scheduling a rehearing or ordering Bridge to serve his full term of imprisonment.

ficiently supported by a given record may not preclude the Board from considering new information. The Parole Commission was entitled, indeed was legally required, to fulfill its obligation to consider all relevant and reasonable available evidence, *see* 18 U.S.C. § 4207, by conducting a rehearing to assess new adverse information and recompute Bridge's parole eligibility date, *see* 28 C.F.R. § 2.28(f).

## IV. CONCLUSION

In sum, we have jurisdiction to review the substance of the Parole Commission's appeal. We hold that absent a showing of bad faith on the part of the Commission, a federal court may not preclude the Commission from exercising its statutory right to reconsider newly acquired evidence adverse to a prisoner. We will reverse and remand the matter for further proceedings consistent with this opinion.